(Decided 18th April, 1890.)

The Metropolitan Life Insurance Company of New York *vs.* William B. Dempsey.

*Foreign insurance Companies—Action on Policy of Life insurance—Proof of Incorporation—Section 124 of Article 23 of the Code—Order of Evidence—Waiver of Limitation clause in Policy of Insurance—Prayers and Instructions to the Jury.*

Section 124 of Article 23 of the Code, makes it unlawful for an insurance company chartered by any other State, to do business in this State before a copy of its charter is filed with the Insu-

Metropolitan Life Ins. Co. *vs.* Dempsey.

rance Commissioner, and a power of attorney appointing a citizen of this State to receive service of legal process in its behalf. In an action against a foreign insurance company upon a policy of insurance, the defendant having, among other defences, pleaded that it was not a body corporate, it was HELD:

1st. That the plaintiff had the right to offer in evidence a book found among the books and papers in the office of the Insurance Commissioner of the State, which was shown to be the only book in the office bearing the defendant's name, and contained a document which purported to be a copy of the defendant's charter, and of its by-laws, with a certificate, purporting to be signed by its secretary and vice-president, with a seal attached, that it was a true copy of its charter and by-laws.

2nd. That it was competent for the plaintiff to lay before the jury proof that the defendant was using the corporate name mentioned in the copy of the charter offered in evidence, and was exercising the franchises therein granted under the organization set forth in the by-laws, and on this evidence, it would be legitimate for the jury to infer, if they so believed, that the copy of the charter was filed in the office of the Insurance Commissioner by the defendant's authority.

3rd. That if filed, by its authority, as its Act of incorporation, it was evidence against the defendant to prove its corporate existence.

4th. That the plaintiff, being obliged to prove his case progressively, had the right to begin with proof of the fact that a document of the kind in question was in the office of the Insurance Commissioner.

5th. That a clause in the policy providing that no suit should be brought thereon after six months from the date of the death of the insured, was no bar to the action, though brought after that time, if it was found by the jury, upon competent proof, that the plaintiff and the superintendant of the defendant had agreed upon the amount to be paid, and that the superintendent had promised that the money should be paid as soon as he could get it from the defendant, and that the superintendent had the power to make such agreement.

6th. That prayers, which were a mere iteration of other prayers which were granted, were properly refused.

7th. That it was error to reject a prayer of the defendant denying the right of recovery if the jury should find that one of the questions in the application for insurance, to which their attention was particularly directed, had been answered falsely, notwithstanding the jury had been already instructed, that, "if any answer was in any respect untrue, their verdict should be for the defendant."

It is more satisfactory to call the attention of the jury to distinct questions of fact, than to give them instructions in general terms.

APPEAL from the Baltimore City Court.

The case is stated in the opinion of the Court.

*First Exception.*—Stated in the opinion of the Court.

*Second Exception.*—At the trial the defendant offered the ten prayers following :

1. That if the jury find that this cause was not commenced until more than six months after the death of Mrs. Dempsey, then such fact under the terms of the contract of insurance sued on is conclusive evidence against the plaintiff's claim, and their verdict must be for the defendant.

2. That if any answer made by Mrs. Dempsey in the application for insurance, offered in evidence, was in any respect not wholly true and strictly correct, even although she may not have known it, and even although she made the same ignorantly and innocently, and with no intention to deceive, then their verdict must be for the defendant.

3. That according to the terms of the contract of insurance sued on in this cause, every answer made by Mrs. Dempsey on the application for insurance made by her and offered in evidence must be true, or the policy will be void, and if any answer in said application was in any respect untrue, their verdict should be for the defendant.

4. That if Mrs. Dempsey, prior to her application for insurance, offered in evidence, had consumption, or any disease of the lungs, or spitting of blood, and in answering question 18 in said application, which was in these words, viz., has life proposed now or ever had (among other affections) consumption, disease of the lungs, spitting of blood, answered, "No," then their verdict must be for the defendant.

5. That if Mrs. Dempsey died of consumption after six calendar months, and within one year of the date of the policy of insurance issued by defendant upon her life, then even if at its date she was in sound health and contracted the disease of consumption afterwards, the only amount for which the defendant, by the terms of the policy, was liable at her death, was $77.25, even although all statements made by Mrs. Dempsey were true, and the terms of the policy had, in all respects, been complied with by her or on her behalf.

6. That if Mrs. Dempsey, prior to her application for insurance, had a chronic disease named "Phthisis," or consumption, and did not state the same in answering questions in said application, or withheld in so doing any material fact about her life, then their verdict must be for the defendant.

7. That if Mrs. Dempsey was not in sound health at the time of making her application for insurance, and answered the 22nd question in said application "Yes," or if the duration of her sickness was three years before her death, or if she had a chronic disease called "*Phthisis*" for two or more years before her death, and in making her application for insurance did not so inform the defendant, then their verdict must be for the defendant.

8. That if the weekly premiums stipulated to be paid, were more than four weeks in arrear, the policy of insurance sued on was, by its terms, void, and unless they can find from evidence produced before them, that such insur-

ance were paid up to within four months of the death of Mrs. Dempsey, on October 5th, 1886, their verdict must be for the defendant.

9. That plaintiff having alleged in the declaration that defendant was a corporation, and the same being put in issue by the pleadings, the burden of proving it to be such was upon the plaintiff, and no legally sufficient evidence having been offered to prove it, their verdict must be for the defendant.

10. That no legally sufficient evidence has been offered in this cause to connect defendant with the book or paper produced by the witness Jackson, and no other evidence having been offered by plaintiff, than that of the witness Jackson, to sustain plaintiff's allegation that defendant was a corporation, their verdict must be for the defendant.

The Court (STEWART, J.) granted the third, fourth, fifth and eighth of said prayers, and rejected all the others. The defendant excepted, and the verdict and judgment being against it, appealed.

The cause was argued before ROBINSON, IRVING, BRYAN, FOWLER, and McSHERRY, J.

*Thomas R. Clendinen*, for the appellant.

*Henry Duffy,* and *Edward Duffy, Jr.*, for the appellee.

BRYAN, J., delivered the opinion of the Court.

Dempsey obtained a judgment against the Metropolitan Life Insurance Company of New York on a policy of insurance on the life of his wife. Several questions arise on this appeal.

The defendant pleaded, among other defences, that it was not a body corporate. At the trial the plaintiff offered in evidence a book found among the books and

papers in the office of the Insurance Commissioner of the State of Maryland, which was shown to be the only book in the office bearing the defendant's name. This book contained a document which purported to be a copy of the defendant's charter, and a copy of its by-laws, with a certificate purporting to be signed by its Secretary and Vice-President that it was a true copy of its charter and by-laws. There seems to have been a seal attached to this certificate, but the record does not state whose seal it was. The defendant excepted to the admission of the book in evidence. The statute (now embodied in the Code) makes it unlawful, under certain penalties, for an insurance company chartered by any other State, to do business in this State before a copy of its charter is filed with the Insurance Commissioner, and a power of attorney appointing a citizen of this State to receive service of legal process in its behalf. There are other requirements which it is not now necessary to mention. *Article* 23, *sections* 124, 127 *and* 138. They do not appear to have been obeyed by the defendant. If the plaintiff could have proved that this defendant was using the corporate name mentioned in the copy of the charter offered in evidence and was exercising the franchises therein granted, under the organization set forth in the by-laws, it would have been competent to lay these facts before the jury, and on this evidence it would have been legitimate for them to infer (if they so believed) that the copy of the charter was filed in the office of the Insurance Commissioner by the defendant's authority. It would have been its duty to file it ; it would have derived a benefit from filing it, and would have been liable to punishment if it had failed to file it. Of course, if filed by its authority as its charter of incorporation, it would have been evidence against itself to prove its corporate existence. Now, the plaintiff could not prove all these facts at the same instant. He was obliged to estab-

lish his case progressively.    One of the facts to be proved
was that a document of the kind in question was in the
office of the Insurance Commissioner, and he had a right
to begin his case by offering this proof.    In *Plank Road
Company vs. Bruce*, 6 *Md.*, 457, it was held that a plain-
tiff might offer his proof in any order which he chose ;
and that if the evidence was material to the issue, the
Court had no right to require that he should state in
advance that he intended to follow it up with other
proof.    The other evidence which the plaintiff offered on
this question was rather meagre ; but the defendant's
proof showed that it was carrying on business in the
City of Baltimore under the corporate name ; that it re-
ceived applications for life insurance and issued policies
according to established forms ; that it had a home office
in New York City, and an agency in Baltimore ; that
it had a president, a secretary, superintendents and
assistant superintendents ; and that its policies con-
tained stipulations in reference to suits to be brought
against it.

The defendant offered ten prayers for the instruction
of the jury.    The first prayer (which was refused) was
as follows :    " That if the jury find that this cause was
not commenced until more than six months after the
death of Mrs. Dempsey, then such fact, under the terms
of the contract of insurance sued on, is conclusive evi-
dence against the plaintiff's claim, and their verdict
must be for the defendant."    The original policy of in-
surance was not offered in evidence, it having been lost
or mislaid.    The defendant produced a paper-writing,
and offered evidence that it was a correct copy of the
policy.    It contained the following clause :    "No suit
shall be brought nor action commenced against said
company under this policy, until ten days shall have
expired after the filing of proofs in its chief office, nor
after six months from the date of death of the insured;

it being understood and agreed that if any such suit or action be commenced after said six months, the lapse of time shall be taken to be conclusive evidence against any claim—the provisions of any and all statutes of limitations to the contrary being hereby expressly waived.'' As the defendant undertook to prove the correctness of the copy of the policy, it ought, in its prayer, to have left the question to the jury. It was for them to determine, and they had the right to find the issue according to their belief of the evidence. We will, however, give our views on the point presented. It was perfectly lawful for the defendant to stipulate that all litigation with respect to its liability should be commenced within a specified period, and it is entitled to the full benefit of its contract in this regard. There are, however, necessary limitations upon the literal terms of the contract, and these arise from the nature of particular cases. For instance, where there is war between the governments of the two parties, as no suit could be brought on the policy of insurance pending the hostilities, contracts of this kind are inoperative. *Semmes vs. Hartford Insurance Company,* 13 *Wallace,* 161; *Earnshaw vs. Sun Mutual Aid Society,* 68 *Md.,* 475. And, where there has been an adjustment of the claim, and a promise to pay the amount, it would be unreasonable to hold that a delay of six months in bringing suit should be conclusive evidence against the claim. And so it has been decided. *Peoria Marine and Fire Insurance Company vs. Whitehill,* 25 *Illinois,* 475 ; *Farmers and Merchants' Insurance Company vs. Chestnut, et al.,* 50 *Illinois,* 117 ; *Andes Insurance Company vs. Fish,* 71 *Illinois,* 625. At the trial, evidence was offered on the part of the plaintiff that he and the superintendent of the defendant agreed upon the amount to be paid, and that the superintendent promised that the money should be paid as soon as he could get it from New York, where

the defendant's money was kept. If this agreement was made, and the superintendent had the power to make it, the action ought not to be barred.

In the application for insurance it was agreed that if any of the answers to the questions asked in the examination of the applicant for insurance should be untrue the policy should be void. There was considerable conflict of evidence as to the truth of these answers. The jury were instructed in defendant's third prayer that if any answer was in any respect untrue, their verdict should be for the defendant ; and in the fourth prayer their attention was specially called to certain diseases mentioned in the eighteenth question, and they were told that if the applicant had untruly stated that she had never had these diseases, their verdict must be for the defendant. The second and sixth prayers were merely iterations of the third and fourth, and there was no error in refusing them. The fifth and eighth prayers were granted. The seventh prayer was pointed distinctly to the twenty-second question and answer. The question was in these words : "Is said life now in sound health ? " and the answer was "Yes." This answer was given less than nine months before the death of the applicant for insurance; and there was evidence at the trial that she died of *phthisis pulmonalis*, and that she had been sick three years. It is more satisfactory to call the attention of the jury to distinct questions of fact than to give them instructions in general terms, and we see no reason wherefore the defendant was not entitled to have the import and bearing of this answer clearly explained to the jury, notwithstanding the general instruction embodied in the third prayer. We think that the seventh prayer was an apt and proper exposition of one of the important questions in controversy. It was in these words : "That, if Mrs. Dempsey was not in sound health at the time of making her application for

insurance, and answered the twenty-second question in said application 'Yes,' or if the duration of her sickness was three years before her death, or if she had a chronic disease called *phthisis* for two or more years before her death, and in making her application for insurance did not so inform the defendant, then their verdict must be for the defendant.'' The Court refused to grant it. The ninth and tenth prayers are covered by what has been said in discussing the first exception.

For error in refusing the defendant's seventh prayer, the judgment must be reversed, and a new trial awarded.

*Judgment reversed, and*
*new trial awarded.*

