## THE HOME FRIENDLY SOCIETY OF BALTIMORE, MARYLAND. *vs.* ANNIE ROBERSON.

*Prayer Not Referring to the Pleadings—Limitation in Life Insurance
Policy as to Time of Bringing Suit—Act of Insurer Preventing In-
stitution of Suit—Waiver of Limitation Clause.*

When a prayer which does not refer to the pleadings in the case is
granted, the appellate Court in determining whether the same was cor-
rect or not  considers the evidence only, and is precluded from a con-

sideration of the pleadings by Code, Art. 5, sec. 9, which provides that the Court of Appeals shall not decide any question which was not decided by the Court below.

A policy of life insurance provided that an action on it must be commenced within six months after the death of the person insured, and also that "before any payment can be claimed under this policy, said policy and receipt book must be surrendered." After the death of the insured, plaintiff, the beneficiary under the policy, notified the insurer and was told that the loss would be paid if the receipt book was produced. Plaintiff said that she could not find the book and that she had last seen it in the possession of the insurer's agent when he called to collect the premiums, which she had then paid. The insurer contradicted her evidence as to payment of the premiums. This action on the policy was not begun until after the expiration of the period of limitations mentioned therein. *Held,* that there was legally sufficient evidence to go the jury to show that the plaintiff had been prevented from bringing suit on the policy within the six months by the conduct and representations of the defendant.

*Held,* further, that the insurer's promise to pay if the receipt book was produced, made after the expiration of the six months limitation, was a waiver of the same, and if the jury found that the insurer's agent took away the book when he collected the last premium, the plaintiff is relieved from the condition of producing the book in order to take advantage of such waiver.

Appeal from the Superior Court of Baltimore City (WICKES, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BOYD, and SCHMUCKER, JJ.

*S. Johnson Poe* and *Edgar Allan Poe* (with whom was *John P. Poe* on the brief), for the appellant.

*James J. McGrath* (with whom was *Herbert B. Stimpson* on the brief), for the appellee.

BOYD, J., delivered the opinion of the Court.

The appellee recovered judgment against the appellant on a policy of insurance on the life of her son, Thomas H. Roberson. The only question presented to us for review is the refusal of the lower Court to grant the defendant's (appellant's)

third prayer, which is as follows : " The jury are instructed that there is no evidence in this case legally sufficient to show that the plaintiff was prevented from bringing suit on the policy sued on within six months next after the decease of the insured by any action, conduct or misrepresentation by the defendant or any of its duly authorized agents, and that said suit not having been instituted within said six months their verdict must be for the defendant."

There is a condition in the policy that " No suit or action at law or in equity shall be maintainable to enforce the performance of this contract, until after the filing in the principal office of the society satisfactory proof of the death of the person named in the first column of this schedule, or unless such suit or action shall be commenced within six months next after the decease of the person insured under this policy ; and it is expressly agreed that should any such suit or action be commenced after the expiration of said six months, the lapse of time should be deemed as conclusive evidence against the validity of such claim, any statute of limitation to the contrary notwithstanding."

This suit was brought on February 7th, 1903, and Thomas H. Roberson died on the 22nd day of February, 1902, nearly a year before.   In *Metropolitan Life Ins. Co.* v. *Dempsey*, 72 Md. 288, it was said, in speaking of a similar provision in a policy, " It was perfectly lawful for the defendant to stipulate that all litigation with respect to its liability should be commenced within a specified period, and it is entitled to the full benefit of its contract in this regard.   There are, however, necessary limitations upon the literal terms of the contract and these arise from the nature of particular cases."   The appellant relies on that provision in the policy and the principle thus announced by this Court as the foundation for its prayer.

At the oral argument and in the brief the attorneys for the appellant laid great stress on the issue made by its fifth plea, the replication to it and the rejoinder.   That plea sets out the above-mentioned provision in the policy, and the plaintiff replied that the failure to sue within the six months " was due

to the actions, conduct and representations of the defendant who has waived its right to set up said period of limitation and is estopped so to do." The rejoinder denied those statements and issue was joined. It will be observed, however, that the prayer does not refer to the pleadings, and hence we are not permitted to consider them. Since the case of *Leopard* v. *C. & O. Canal Co.*, 1 Gill, 222, this Court and its predecessors have frequently announced the rule therein established, that when a prayer is based on the evidence, without making reference to the pleadings, the appellate Court is precluded by the Act of 1825, ch. 117 (now sec. 9 of Art. 5 of the Code), from considering the state of the pleadings. It is unlike an objection to the admissibility of evidence. which requires the trial Court to examine the pleadings, in order to determine whether it is admissible, or a demurrer, which is a direct attack upon the pleadings themselves, or a motion in arrest of judgment, where the Court must examine the pleadings to determine the validity of the verdict. In *Dorsey* v. *Dashiell*, 1 Md. 207, the Court held that it could not consider the pleadings to ascertain whether issue was joined on a plea of limitation, in passing on a prayer which referred to the evidence applicable to the limitation, but did not refer to the pleadings. It was said by CHIEF JUDGE ALVEY in *South Baltimore Company* v. *Muhlbach*, 69 Md. 406, " It is the settled practice in this Court, that where the Court below either grants or rejects a prayer, asking an instruction to the jury that if they believed certain facts, the plaintiff is, or is not, entitled to recover, if there be no reference to the pleadings, this Court will not assume that the Court below inspected the pleadings, and adjudged their sufficiency or insufficiency to sustain the prayer." And again in *Walsh* v. *Taylor*, 39 Md. 597, that learned Judge said : " The instruction, as it is perceived, makes no reference whatever to the pleadings in the cause. There was, therefore, no question raised by the instruction as to the pleadings *or the issues formed thereby.*" In 2 *Poe*, sec. 302, many authorities are cited to sustain the statement that, " unless special reference is made to the pleadings, prayers will be

held to relate exclusively to the evidence, and their correctness will be determined entirely by a consideration of the evidence.    Wherever, therefore, it is proposed to make a point or raise a question upon the pleadings, or upon the testimony as applicable to the pleadings, it is essential to call special attention to them.    This is a well-settled doctrine in our practice."    The late case of *Smith* v. *Heldman*, 93 Md. 353, shows how far we feel constrained to carry the rule first announced in *Leopard* v. *Canal Co.*, as we there reached a conclusion different from the one first announced when our attention was called to the fact that the prayer under consideration did not refer to the pleadings, which had been overlooked.    So without further discussion of this question, it is manifest that we cannot be governed by the issue made by the fifth plea and the subsequent pleadings filed in reference to it, but the correctness of the prayer must be determined exclusively by a consideration of the evidence in the record which will be briefly referred to.

There was a controversy between the parties as to whether the premiums had been paid.    The plaintiff testified she had paid all the assessments due on the policy—the last one having been paid on February 19th, 1902,—three days before the death of her son—while Mr. Weaver, the defendant's agent who collected the premiums, testified that they were in arrears for over five weeks at the death of the insured, which, if true, forfeited the policy.    The plaintiff had a book in which receipts of premiums were entered.    She was asked "Where is that book now?" and replied "I couldn't tell you where it is. I gave the book to Mr. Weaver and went upstairs and I have not laid eyes on it since."    She said she paid the premium in her front parlor on the last occasion, and in answer to the question whether she waited until Weaver signed the book she said:    "No, sir, because I had to go up to my sick child and when I came down again the book was gone and I wasn't there at the time and the book was gone and when I went to look for the book on Saturday it couldn't be found, and that was when the death of the child was."    According to her tes-

timony she called at the office of the appellant on the day her child died and also on the following Tuesday and on both occasions the agent who paid her sick benefits, which she received under another policy, told her to bring the book for the life policy and she told him she could not find it, "then he said when I bring the book it will be all right." She was not able to find the book and finally she placed the claim in the hands of Mr. McGrath, an attorney. He called on Mr. Chase, who was the vice-president of the company. He said that after talking the case over, he told Mr. Chase to consider the matter, which he promised to do, and later called him up on the telephone, when he again went to see him. In answer to a question by the Court as to when he saw him, he replied, "In the last of February, 1903, and he told me *everything was all right* and *just as soon as the book was produced he would pay the money;* I told him we could not produce the book; he told me he had stated the same thing to Annie Roberson, the mother of the child." Mr. Chase testified that he told Mr. McGrath they would talk to him after he produced the book "and it showed different" from their records, that he could not say anything then. In answer to the question what he meant by that, he replied; "Why of course if the book was found and showed it was paid up we had nothing to do but to pay the policy, that was all."

The conversations testified to by the plaintiff were just after the death of the child, but according to her statement the agent of the company said when she brought the book it would be all right and she further said he did not tell her that she was in arrears and therefore "out of benefits." If that be true and it was for the jury to determine, an ignorant woman, as she apparently is, was likely to be mislead by such statements, and to believe that she could not recover unless she produced the book. Or it might well be that under such circumstances she still hoped the book could be found, and living in that hope a period of six months expired before she consulted counsel as to her rights. In the case of *Balto. Life Ins. Co.* v. *Howard*, 95 Md. 259, the present Chief Judge said: "The

policy holders of this kind of an insurance company are generally poor and illiterate people who most need protection against harsh, technical forfeitures, because least able to appreciate their significance and because easily induced by the conduct of the company to act upon the belief that their policies are in force." ˙The record shows that proofs of the death of the insured had been furnished and the only thing lacking was the production of the receipt book, according to the plaintiff's evidence.    When then she was told that when she brought the book "it will be all right," the natural effect was to lull her into inactivity and a more intelligent person than the plaintiff appears to be might easily have been induced to defer litigation beyond the six months—still hoping that the book would be found or that the company would eventually pay her without the expense and annoyance of a law suit over a small sum of money.    Hence it cannot be said that there was no evidence that she was.prevented from suing within the six months by any action or conduct of the defendant or its agents.

But after the expiration of that time, according to Mr. Mc-Grath's evidence, the vice-president of the company said "everything was all right" and promised to pay the money just as soon as the book was produced and he did not mention the clause in the policy relied on in this prayer.    It is true that was denied by Mr. Chase, but for the purposes of this prayer, we must assume it to be correct.    If the book had been produced there would unquestionably have been a waiver of this particular condition in the policy.    If a maker of a promissory note was to say, after it was barred by the Statute of Limitations, to one who had admittedly been the holder of it but claimed to have lost it, "It is all right and just as soon as you produce the note I will pay it," can it be doubted that the holder could recover on that acknowledgment even if he could not produce the note, but proved its loss and complied with the statutes applicable to suits on lost instruments?    That would be an acknowledgment of an existing debt, which under our decisions would clearly remove

the bar of the statute, such as *Keplinger* v. *Griffith*, 2 G. & J.
296; *Beeler* v. *Clarke*, 90 Md. 221, and *Babylon* v. *Duttera*, 89
Md. 444.   There would be much more reason for holding
the statement of Mr. Chase to Mr. McGrath to be a waiver of
this condition, as the maker of the note might deem it necessary
for his protection to obtain possession of it, while this book
only contained the receipts of the company's agent, and, if
lost, its non-production could furnish "no real objection to the
payment" as was said in *Keplinger* v. *Griffith*, or such as
"would exempt him from any moral obligation to pay," as
was stated in *Beeler* v. *Clarke*.   But again, although it is pos-
itively denied by the agent, there was some evidence tending
to show that he took the book with him when he made the
last collection of the premium, and it was for that reason that it
could not be produced.   If that be believed by the jury it
would be sufficient to relieve the plaintiff of the necessity of
producing the book, in order to get the benefit of the waiver.
Another condition is that "before any payment can be claimed
under this policy, said policy and receipt book must be sur-
rendered to the society."   That was the condition, according
to the plaintiff's evidence, relied on both before and after the
six months period had expired, upon which payment was re-
fused, and if the jury believed that the agent had taken the
book when he was at the plaintiff's house collecting the pre-
mium, and when he had it in his possession to make the
entry, as the representative of the company, the company
should be held responsible for such act of its agent so as to
relieve the plaintiff from the condition of producing the book
in order to get the benefit of the waiver.   It would not do to
let the company hide itself behind such an act of its agent,
authorized by it to collect its premiums and receipt for them
in that book.   There is a distinction made by the authorities
between cases where the limitation is prescribed by statute
and those where it is fixed by contract.   *Earnshaw* v. *Sun
Mut. Aid Society*, 68 Md. 475; *Met. Life Ins. Co.* v. *Dempsey*,
72 Md. 295.   That fixed by contract can be more easily
waived.   In *Dempsey's case, supra*, it was said: "Where there

has been an adjustment of the claim, and a promise to pay the amount, it would be unreasonable to hold that a delay of six months in bringing suit should be conclusive evidence against the claim," and where, both before and after the expiration of the six months, there is a promise to pay upon the production of the book in which the receipts of premiums are entered, and the book cannot be produed within six months because the company's agent took it with him when he made the last entry, it would be still more unreasonable to hold that the delay in bringing the suit should be conclusive against the validity of the claim. Of course we do not mean to intimate that the agent did in fact take the book. It is difficult to imagine any reason for his doing so, under the circumstances, but there was some evidence to that effect and it was for the jury to pass on.

We are then of the opinion that there was some evidence legally sufficient to show that the plaintiff was prevented from bringing suit *within the six months* by the action or conduct of the defendant's agents, and there was also some evidence of a waiver *after* the six months. Therefore this prayer could not properly have been granted and the judgment must be affirmed.

> *Judgment affirmed, the appellant to pay the costs.*

(Decided November 30th, 1904.)