(13 Misc. Rep. 395.)

### ELSNER v. PRUDENTIAL INS. CO. OF AMERICA.

(City Court of Brooklyn, General Term.  June 24, 1895.)

EVIDENCE—ADMISSIONS OF AGENT.

Where an insurance policy provides that agents of the insurer are not authorized to make, alter, or discharge contracts, waive forfeitures, or receive premiums in arrears, the statements of an agent employed solely to collect weekly premiums are not binding on the company.

Appeal from trial term.

Action by Bertha Elsner, as administratrix of August Elsner, against the Prudential Insurance Company of America, on a life insurance policy.  From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals.  Reversed.

Argued before OSBORNE and VAN WYCK, JJ.

Magner & Hughes, for appellant.

Chas. J. Kurth and J. Stewart Ross, for respondent.

OSBORNE, J.  Plaintiff brought this action to recover on a policy issued by defendant, September 12, 1887, on the life of her husband, August Elsner, whereby defendant, in consideration of a weekly payment of 34 cents, agreed to pay $500 on the death of said Elsner, and satisfactory proof thereof.  The eighth clause or condition of the policy provided as follows:

"(8) If, after the payment of the weekly premium hereon for five or more years, this policy shall become void by reason of default of payment of premiums, the company agrees to issue a paid-up policy for the sum hereby insured, for a term of as many weeks," etc.: "* * *  provided that this policy shall be surrendered to the company, and application made in writing for such paid-up policy, within sixty days after default in the payment of premiums thereon."

And the eleventh clause or condition of said policy was as follows:

"Agents are not authorized to make, alter, or discharge contracts, waive forfeitures, or receive premiums in arrears beyond the time allowed by the regulations of the company, which in no case shall exceed four weeks."

August Elsner, the assured, died March 29, 1893.  It is conceded that the proportionate period fixed by the eighth clause of the policy was, in the present case, for a period of 60 weeks.  It appeared from the evidence, and is not disputed, that the last weekly payment on the policy in suit was made on October 31, 1892, for the premium that became due on October 10, 1892.  Without further payments of premium or action on the part of the assured, it is conceded that the policy would have lapsed on November 14, 1892.  Plaintiff, however, claimed the right to recover on the ground that the assured had taken the proper steps to obtain a paid-up policy, under the above-quoted eighth clause, and that the defendant postponed and put off issuing such paid-up policy on various pretexts, and thereby misled and induced the assured to discontinue further payment of weekly premiums.  The case was tried, and the liability of the defendant was left to the jury to determine, on the question as

to whether the defendant, by its officers, waived the payment of premiums on the policy from October 10, 1892, to the date of Elsner's death: "Did the company, by its officers, agree with the assured that he need not pay premiums while these negotiations were going on?" Plaintiff's evidence was to the effect that on the 7th of November, the week following the date of the last payment, she went to the office of Mr. Eichbauer, the superintendent of the Brooklyn division of defendant, and asked if the policy was good for six months without paying, and that Eichbauer told her: "Yes; your policy is good for a whole year, without paying a cent." Subsequent to that time, plaintiff testified, she had various conversations with one Spies, a collector of the defendant, when he made his weekly calls to collect payments on other policies on the lives of Mrs. Elsner and her four children. That she asked him about her husband's policy, and was told by the collector for the time being, on some occasions, that the superintendent had no time to talk to him about it; on another occasion, that he would take the policy, and examine it in the head office, and "that after that we would get the policy back." And plaintiff on November 21, 1892, gave the collector the policy, and took his receipt for it. Plaintiff further testified that her husband wrote to the home office of the defendant, at Newark, N. J., inquiring "whether that had all been arranged now with the policy," and that a letter was received from the company, in reply, stating "that Mr. Eichbauer would arrange the matter with us." The collector Spies died early in January, 1893, and one Lavinsky acted as collector in his place; and plaintiff testified that she also talked to him when he called to collect from time to time, about her husband's policy, and that he told her and her husband, on several occasions, "that he must have lost the policy, and that he had made application for another policy." All evidence as to plaintiff's conversations with defendant's agents for the collection of premiums, and what they said about a new policy, was objected to by the counsel for the defendant, and he excepted to its admission.

We think that the learned trial judge erred in admitting the statements of these collectors of defendant about the new policy. They were agents solely to collect weekly premiums, and under the eleventh clause of the policy, above quoted, plaintiff and the assured had notice that they had no authority "to make, alter, or discharge contracts, waive forfeitures," etc. The policy provided that in order to obtain a paid-up policy the old policy should be surrendered, and application in writing made for a paid-up policy within 60 days after default in the payment of premiums. This was never done; and even if the company was disposed to waive those provisions, and did refer the matter to Eichbauer, its Brooklyn superintendent, "for arrangement," as plaintiff claimed, no further application was ever made to him for such paid-up policy by plaintiff or the assured. Remembering the theory of waiver, on which this case was submitted to the jury, it is easy to see how the jury may have been misled by the admission of the statements of the defendant's collectors, and so concluded that the company had waived

further payments of premiums on the policy in question while the paid-up policy was being arranged for.

Without passing on any of the other questions raised on this appeal, we are of the opinion that in consequence of the erroneous admission of this evidence the judgment, and order denying motion for a new trial, should be reversed, and a new trial ordered; costs to abide the event.