(23 App. Div. 53.)

### SHEA v. UNITED STATES INDUSTRIAL INS. CO.

(Supreme Court, Appellate Division, Second Department. December 7, 1897.)

LIFE INSURANCE POLICY—BENEFICIARIES.

Where a policy of insurance, payable to the executors or administrators of the insured, reserves the .alternative right to the company to pay the amount thereof, in case of death, to any blood relative of the insured, upon production of the policy, oral representations made on behalf of the company, at the time a policy is taken out by such a relative, who is unable to read, that it will thus pay to him, constitutes a binding election at that time, and deprives it of any option under the policy.

Appeal from special term.

Action by Sarah Shea against the United States Industrial Insurance Company. From a judgment dismissing plaintiff's complaint she appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Thomas F. Magner, for appellant.
Edward W. S. Johnston, for respondent.

HATCH, J.    Upon motion made at the close of plaintiff's proof, the court struck out all the evidence, and dismissed plaintiff's complaint.    This ruling proceeded upon the ground that the defendant had compromised the claim arising upon the policies of insurance with the husband of the deceased, and paid him the sum agreed upon, and that it became by this act released from any further liability to any person thereon.    The evidence given upon the trial disclosed this state of facts:  The insured was the daughter of the plaintiff.    On the 23d day of October, 1893, the plaintiff procured the life of the said daughter to be insured with the defendant, and the latter issued and delivered to the plaintiff this policy of insurance upon such life. The premium required to be paid was the weekly sum of 25 cents, which the plaintiff paid until the daughter's death.    The sum secured to be paid under this policy at the death was $500.    About the 13th day of August, 1894, the plaintiff procured the issuance of another policy upon the life of her daughter, by the defendant, in all respects like the former policy except its date.    Upon this policy the plaintiff paid the premium until the death of the daughter.    After the issuance of the last policy the daughter married one John Koster, and thereafter lived with him until her death, which occurred on the 11th day of November, 1895.    An indorsement was made upon the first policy that "an additional policy in this company for $500 is permitted."    The fact of the marriage was also indorsed thereon. Proofs of death were immediately made out, and filed with the company, corresponding in all respects with their requirements.    No objection was made thereto by the company, and the same were retained by it.    At the time when the policies were issued the agent who then represented the company stated to the plaintiff that, as she was a blood relative of the insured, she would be the beneficiary therein, and entitled to the amount of the insurance, if she paid the premiums as required.    It also appeared that the plaintiff could neither read nor write;  that the contract of insurance was not read to her, except that part of it which provided for payment to any relative by blood or connection of the insured.    It also appeared that the superintendent of the defendant company instructed agents in soliciting insurance to represent that a blood relative or a relative by marriage of the insured could become a beneficiary under the policy;  and if such person held the certificate and paid the premiums, and was in good standing when the insured died, upon making proper proof of death such person would become the legal beneficiary.    And the agent in this case testified that he made such representations to the plaintiff when she took out the policies of insurance upon the life of her daughter.    It also appeared that the company had recognized such persons as beneficiaries under like policies, and had paid losses, by death, in other cases, where the beneficiary was a blood relative. This testimony was sufficient to authorize a jury in finding that the company became bound in accordance with such representations. Hence the testimony authorized a finding that the representation was the direct act of the company.    It could be bound by acquiescence in the act.    "In determining the authority of agents the instructions are not necessarily controlling;  that is to say, if you instruct your

agent to do one thing or to exercise only limited authority, and you knowingly habitually suffer him to exercise greater authority, you are bound by the authority you allow him to exercise, your instruction to the contrary notwithstanding." Powers v. Insurance Co., 83 Hun, 254, 31 N. Y. Supp. 626, affirmed on appeal 145 N. Y. 654, 41 N. E. 90. As the plaintiff could not read or write, she was entitled to rely on the representations made to her by the agent of the company when the insurance was effected, and such representations became the contract of insurance between the parties.

If the policies which were issued did not conform to the contract which was made, the plaintiff, in order to assert her rights, might be compelled to resort to an action to reform the same. But we do not think such step a condition precedent in this case, as we think the policy as issued contains the contract as made in one of its alternative provisions, and this action permits of the enforcement of that clause as the contract of the parties. The recital in the policy is that in consideration of the agreements, and of the payment to the company of the weekly premiums, it promises to pay unto the executors or administrators of the insured, "unless payment shall be made under the provisions of article second," upon filing satisfactory proofs of death during the continuance of the policy. Article second is as follows:

"Second. To Whom Insurance may be Paid. The company may pay the sum of money assured hereby to any relative by blood or connection by marriage of the insured, or to any other person appearing to said company to be equitably entitled to the same by reason of having incurred the expense in any way on behalf of the insured, for his or her burial, or for any other purpose; and the production by this company of a receipt signed by any or either of said persons, or of other sufficient proof of such payment to any or either of them, shall be conclusive evidence that such sum has been paid to the person or persons entitled thereto, and that all claims under this policy have been fully satisfied."

This article corresponds with the representations made to the plaintiff, with this difference: that, instead of being an absolute promise to pay, it is permissive at the option of the company. As the company, however, made its absolute agreement with the plaintiff that she should be the beneficiary, we think such agreement had the force of a present election upon the part of the company to exercise the option in this regard in favor of the plaintiff. This does not change or vary the terms of the policy. It is an agreement in addition thereto, and entirely consistent therewith, which may rest in parol and be enforced according to its terms. White v. Hoyt, 73 N. Y. 505; Kenyon v. Association, 122 N. Y. 247, 25 N. E. 299. It was no more than an agreement upon the part of the company to presently make its election, instead of waiting until a loss had occurred. In this view of the case the plaintiff became entitled to have the benefits of the insurance for which she had paid, and which the defendant had agreed she should receive. The scheme by which this company seeks to defeat this result is a fraud upon the rights of the plaintiff. The obliquity which prompted the superintendent of this company to resort to the means which the evidence shows he did resort to, in order to escape payment of these policies, is quite astonishing, and calls for

severe condemnation. A bare recital of the evidence is sufficient to make this clear. Koster, the husband of the insured, had never paid a penny of the premiums by which the policies were kept alive. He did not even know that the life of his wife was insured. The superintendent first informed him by letter, which had the effect of producing him at the office, and being there the superintendent suggested that he make a protest against the company paying the money to the plaintiff. This plan was readily acceded to by the husband. As he expressed it, "I would like to get my expenses out of it." The superintendent discouraged the suggestion by the husband that he should get an attorney, and drew the protest himself, which the husband signed. Then he suggested that the husband should see the plaintiff, and see what she intended to do about it, and get her to settle for half. But, evidently repenting of this liberality, he subsequently induced the husband to settle for the sum of $200, taking his receipt therefor, and procuring him to execute a release to the company of all liability on account of the policies. The interest which the husband had or claimed to have arose out of the payment of the funeral expenses, amounting to $101.50. For this the husband was personally responsible. This defendant now seeks to avail itself of this fraudulent and dishonorable act of its superintendent as a defense to this action, claiming that what it did it had the right to do by virtue of the second article of the policy. The law permits the defeat of this unconscionable and fraudulent scheme, for so we must characterize it, despite the sanction given it by the supreme court of Pennsylvania in Brennan v. Insurance Co., 32 Atl. 1042.

The judgment should be reversed, and a new trial granted, with costs to abide the event. All concur.