FORYCIARZ v. PRUDENTIAL INS. CO. OF AMERICA.

(Supreme Court, Trial Term, Erie County. March, 1916.)

1. INSURANCE ☞212—LIFE INSURANCE—ASSIGNMENT OF POLICY—VALIDITY AGAINST INSURED.

An assignment of her industrial life insurance policy by a married woman to secure money to return to her native country in Europe is good as against the insured.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 481, 482; Dec. Dig. ☞212.]

2. INSURANCE ☞212—LIFE INSURANCE—ASSIGNMENT OF POLICY—ESTOPPEL TO DISPUTE VALIDITY.

A husband, who shared in the benefits of his wife's assigning of her policy of industrial life insurance to secure money to take the husband, herself, and their child back to Europe, is estopped from disputing the validity of the assignment.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 481, 482; Dec. Dig. ☞212.]

3. INSURANCE ☞199—LIFE INSURANCE—ASSIGNABILITY OF POLICY.

Ordinarily a policy of life insurance is assignable as any other chose in action.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 468; Dec. Dig. ☞199.]

4. INSURANCE ☞121—LIFE INSURANCE—ASSIGNABILITY OF POLICY.

A policy of life insurance may be legally assigned in New York to one not having an insurable interest in the life of insured.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 166, 167; Dec. Dig. ☞121.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. INSURANCE ⊂⊃583(2)—LIFE INSURANCE—ACTION FOR BENEFIT—NECESSITY OF ASSIGNMENT.

Where a party furnishes money in an emergency to one whose life is insured, and has no assignment of the life insurance policy, he cannot maintain an action against the insurer to recover the benefit under the policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1485; Dec. Dig. ⊂⊃583(2).]

6. INSURANCE ⊂⊃593(1)—LIFE INSURANCE—ASSIGNMENT OF POLICY—RIGHT OF ASSIGNEE.

Where an industrial life policy provided it should be void if assigned, and that the company might make any payment provided for to any relative by blood, etc., or to any person appearing to be equitably entitled by reason of having incurred expense on behalf of insured, being intended to enable insured to raise money in an emergency, and insured, a married woman, assigned such policy in return for the advancement of funds to pay the transportation of herself, husband, and child back to their native country in Europe, the assignee of the policy, upon the death of the insured, was entitled to the insurance money.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1452, 1476-1478, 1482, 1485; Dec. Dig. ⊂⊃593(1).]

7. INSURANCE ⊂⊃155 — LIFE INSURANCE — ACTS AND REPRESENTATIONS OF AGENTS.

While the agents of life insurance companies cannot waive or alter the clear recitals or provisions contained in policies, their acts and representations may be considered as to the companies' interpretation of policies.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 313, 354; Dec. Dig. ⊂⊃155.]

8. INSURANCE ⊂⊃155—LIFE INSURANCE—ACTIONS—EVIDENCE.

In an action against a life insurance company by the assignee of an industrial life policy, in which the company set up that an assignment, by the provisions of the policy, avoided it, the company's act, in sending out to its local agency checks payable to insured, while not a waiver or amounting to an estoppel, could be considered in determining how the company itself interpreted the policy, with all the facts before it.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 313, 354; Dec. Dig. ⊂⊃155.]

9. INSURANCE ⊂⊃388(3)—LIFE INSURANCE—ASSIGNMENT DESTROYING VALIDITY —VALIDITY OF ASSIGNMENT.

Where a policy of life insurance provided that it should be void if assigned or otherwise parted with, the insurer could destroy the validity of an assignment only by declaring the policy itself void, and recognized the validity of the policy by accepting proofs of death without objection, by attempting to make payment to the public administrator, and by attacking the assignment only.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1027; Dec. Dig. ⊂⊃388(3).]

10. INSURANCE ⊂⊃146(3)—LIFE INSURANCE—CONSTRUCTION OF POLICY.

All conditions and provisions favorable to the insurer by life policy, the language of which is that of the insurer, are to be strictly construed, and any ambiguity, if the policy is reasonably susceptible of two constructions, is to be resolved in favor of the insured.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 295; Dec. Dig. ⊂⊃146(3).]

Action by Josefa Foryciarz against the Prudential Insurance Company of America. On defendant's motion to set aside verdict for

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

plaintiff, rendered upon direction, and for dismissal of the complaint on the merits. Motion denied, and plaintiff permitted to enter judgment.

Goldring & Sherman, of Buffalo, for plaintiff.
Roland Crangle, of Buffalo, for defendant.

ROWLAND L. DAVIS, J. On February 13, 1911, the defendant issued a policy of insurance for $204 upon the life of one Regina Nec, a young Austrian woman living with her husband in Buffalo. It was what is known as an "industrial policy," the premium of 10 cents being payable weekly. The printed form of the policy makes the "amount of benefit" payable to the executors or administrators of the insured, unless payment is made by the company to a relative or certain other persons "equitably entitled to the same by reason of having incurred expense on behalf of the insured."

The insured could neither read nor write. Her husband was a laborer; and after a child was born to them it was decided that they would go back to Austria, probably for a visit. To raise the money to go, the insured assigned her policy to her friend, the plaintiff, who bought for the insured, her husband, and child transportation to their former home. They were advised by the agent of the company that this assignment was permissible, and there was some evidence that this instruction was given by the superintendents of the company to agents, and was communicated to prospective insurers when they were solicited to take out these policies. The testimony taken by the stenographer has not been furnished on this motion, and I am stating the evidence from my own minutes, taken on the trial, and from memory.

After receiving the assignment, plaintiff paid the premiums for several months, until or after the death of the insured, which occurred at her old home in Austria. The husband and child apparently have remained in that country. The plaintiff duly filed with the company proof of the death of the insured, made out on the form furnished by the defendant. This was accompanied by the written assignment of the policy to plaintiff. The company shortly afterward, with full knowledge of the facts, audited the claim and forwarded checks to one of its superintendents in Buffalo, to be delivered to the plaintiff. The policy was stamped "Paid." The checks were not delivered to the plaintiff by the superintendent.

After a long interval the checks were returned by the superintendent to the company, and eventually a check was drawn and sent on by the company, payable to the public administrator, before a claim for the sum payable by the terms of the policy was made by him. The husband and next of kin of the insured did not reside in Buffalo, and were making no claim, and it may be that the act of the public administrator in making a claim was inspired by some overofficious local superintendent of the defendant. The checks were delivered to the public administrator, and no effort was made by the defendant to compensate the plaintiff in any way, either for the money she had advanced when she took the assignment, or for the premiums she had paid.

[1] From the statement of facts it may readily be seen that the

merits are entirely with the plaintiff. She had advanced the money, so the insured and her family could go back to their old home, where the former died and was buried. The assignment is good as against the insured. Kimball v. Lester, 43 App. Div. 27, 59 N. Y. Supp. 540; Spencer v. Myers, 150 N. Y. 269, 44 N. E. 942, 34 L. R. A. 175, 55 Am. St. Rep. 675.

[2] The husband is the person who would be entitled to claim practically all the funds in the hands of the public administrator (Code Civ. Proc. § 2670; Decedent Estate Law [Consol. Laws, c. 13] §§ 98, 100), and he, having shared in the benefit, would be estopped from disputing the validity of the assignment. There is no evidence that there were any debts of the insured, so that the public administrator would have no method of distributing the assets of this estate which the defendant has thrust upon him. Had the plaintiff not kept up the premiums, the policy would have lapsed, and there would be no assets.

The principal defense to this action is that by its terms the policy could not be assigned. Article 3 of "provisions" is in part as follows:

*"Policy, When Void.*—This policy shall be void * * * if the policy be assigned or otherwise parted with."

[3, 4] Ordinarily a policy of life insurance is assignable like any chose in action. St. John v. American Mutual Life Ins. Co., 13 N. Y. 31, 64 Am. Dec. 529; Olmsted v. Keyes, 85 N. Y. 593; Cannon v. Northwestern Mutual Life Ins. Co., 29 Hun, 470. In this state it may even be legally assigned to one not having an insurable interest in the life of the insured. Steinback v. Diepenbrock, 158 N. Y. 24, 52 N. E. 662, 44 L. R. A. 417, 70 Am. St. Rep. 424. So that, when the insured made the assignment to the plaintiff, the parties were exercising recognized legal rights, unless the terms of the policy positively and explicitly forbade it. The policy is payable "unto the executors or administrators of the insured, unless settlement shall be made as provided in article 2 under the head of 'provisions' below, immediately upon receipt of due proof of the death of the insured during the continuance of this policy." Article 2 of the "Provisions," referred to, is as follows:

*"Facility of Payment.*—The company may make any payment provided for in this policy to any relative by blood or connection by marriage of the insured, or to any other person appearing to said company to be equitably entitled to the same by reason of having incurred expense on behalf of the insured, for his or her burial, or if the insured be more than fifteen years of age at the date of this policy, for any other purpose, and the production by the company of a receipt signed by any or either of said persons or of other sufficient proof of such payment to any or either of them, shall be conclusive evidence that such benefits have been paid to the person or persons entitled thereto, and that all claims under this policy have been fully satisfied."

These industrial policies are for small amounts and have small weekly premiums. They are sold usually to laboring people of small means. One great purpose of the "facility of payment" provision must be to afford a ready method of raising money for the benefit of the insured, to pay funeral expenses at the time of death, or to furnish medical assistance or some other relief in the last illness, or to have the policy an asset in the hands of the insured in any emergency

in life, so that funds for something other than ordinary purposes may be provided. It is also of advantage that a payment may be made to a person other than the administrator or executor; in cases where there is no estate except the policy, the delay and expense incident to the appointment of such officers may be avoided. We may readily see that these would be strong arguments to be used by agents in selling this kind of insurance to this class of customers; and we find these arguments were used among the people where the insured resided.

Under the terms of the policy there are several possible payees: First, the executor or administrator; second, any relative by blood or connection by marriage; third, any other person equitably entitled to the same by having incurred expense for her burial, or, if the insured is more than 15 years of age, for any other purpose. Who is entitled to select the beneficiary? Always it is the insured, so long as the selection falls within any permissible class. The company should have no right to select a beneficiary, particularly if it contravenes the expressed wish of the insured. The option contained in the policy should be exercised by the company only where the insured has failed to make a choice.

[5] The company gives the insured a permissible list of payees; it furnishes a policy of insurance which it claims may be of value to pay funeral expenses, or an asset in the hands of the insured when an emergency arises. How does it expect the insured to utilize these privileges? If a volunteer furnishes money in an emergency and has no assignment, he cannot maintain an action to recover the benefits under the policy. Ferretti v. Prudential Ins. Co., 49 Misc. Rep. 489, 97 N. Y. Supp. 1007; Marzulli v. Metropolitan Life Ins. Co., 79 N. J. Law, 271, 75 Atl. 473. The only way for the insured to avail herself of the benefit of the policy, under the circumstances, was to assign it, and give to her friend who had advanced money some assurance of remuneration. Otherwise the latter's opportunity for being reimbursed would depend entirely upon the caprice of the company or of some superintendent. By assignment the insured may prevent the payment to a claimant who is unworthy. It cannot seriously be contended that it would be wise to give such an arbitrary power to select the beneficiary to the insurer, and deny a right of choice to the insured. That would furnish opportunity for corruption and improper conduct by unscrupulous agents and superintendents. Shea v. U. S. Industrial Ins. Co., 23 App. Div. 53, 48 N. Y. Supp. 548. To do so would be to make valueless, to a large extent, the opportunity given by the terms of the policy to the insured to provide money at a time of illness or approaching death; it would defeat the manifest purpose of the provision in question, and make it extremely hazardous for any friend to furnish money to the insured in any necessity, in reliance upon the chances of repayment from the only asset the insured might have.

[6] The plaintiff falls within the class of persons "equitably entitled to payment" under the terms of the policy. In other words, she is one of the very persons contemplated as payees when the company

issued this policy. The insured selected her as beneficiary by making the assignment. An assignment must have been within the contemplation of the parties when the policy was issued. When the company attempted to restrict the assignment of the policy, in article 3 as above quoted, it must be assumed it did so only as to persons not having an insurable interest, or who did not fall within the classes of permissible payees, and to prevent advantage being taken of rightful beneficiaries by claimants who were impostors and without merit. But to hold that the policy was not assignable under the circumstances recited would be to subtract much from the value of the policy to the insured, and to render nugatory the purpose of the provisions of the policy permitting the insured to raise money in an emergency.

[7] The plaintiff has recognized that these policies are assignable by its conduct. Agents cannot waive or alter the clear recitals or provisions contained in policies. Gorman v. Metropolitan Life Ins. Co., 158 App. Div. 682, 143 N. Y. Supp. 1063; Legnard v. Standard Life & Accident Ins. Co., 81 App. Div. 320, 81 N. Y. Supp. 516; Elsner v. Prudential Ins. Co., 13 Misc. Rep. 395, 34 N. Y. Supp. 246. But their acts and representations may help in showing the company's interpretation of the policies. Shea v. United States Industrial Ins. Co., 23 App. Div. 53, 48 N. Y. Supp. 548. There is some evidence that agents, with the knowledge of the superintendents, were representing that such policies could be used as an asset in times of need.

[8] The company gave recognition to valid assignments when it furnished a blank for proof of death which has a heading: "Information to be furnished where claimant is other than father or mother, brother or sister, husband or wife." We find in line 4 of the blank in question: "Has claimant a beneficiary form or *assignment* of any kind?" The next line reads: "If so, attach the same to the claim papers." The claimant answered the question, "Yes," and attached the assignment. The defendant then made out and sent on its checks payable to the plaintiff. What does the defendant mean by asking for the assignment? If it regarded the policy as nonassignable, it would not make such an inquiry. The company's act in sending on checks payable to the insured, while not a waiver or amounting to estoppel, may be considered in determining how the defendant itself interpreted the policy with all the facts before it.

[9] In the provision prohibiting assignments, it is stated that the *policy* is void "if the policy be assigned or otherwise parted with." The defendant does not here seek to declare the policy void. It seeks only to declare the assignment void. The company has recognized the validity of the policy by accepting proofs without objection and attempting to make payment to the plaintiff, and by making payment or attempting to make payment to the public administrator. It has no power to declare an *assignment* void. The only way to destroy the validity of an assignment under the terms of the policy was to declare the policy itself void.

[10] The language of the policy being that of the company, all the conditions and provisions favorable to the company are to be strictly construed; and if the policy is reasonably susceptible of two construc-

tions, the ambiguity is to be resolved in favor of the insured. 25 Cyc. 739. In Columbia Bank v. Equitable Assurance Society, 61 App. Div. 594, 70 N. Y. Supp. 767, Patterson, J., says:

"It is manifestly the duty of the insurance company to pay the amount due upon the policy to the real owner of it, or to whomsoever may have acquired a paramount lien upon it or money payable under it according to its terms."

Applying that doctrine to the facts here, we find that the plaintiff is entitled to receive payment. In Heffernan v. Prudential Insurance Co., 88 Misc. Rep. 93, 150 N. Y. Supp. 644, where in an action on a similar policy the Appellate Term held that the plaintiff's complaint should have been dismissed, different questions were presented, and the facts were apparently entirely different from those disclosed here.

In reaching the conclusion that I have, I have not regarded it necessary to discuss one significant memorandum, made apparently in the office of the company on the face of the form of the proof of death. This comes under the head of "Synopsis of Claim Department Examination." The memorandum is as follows:

"Draw two checks, one for $104.00, to be indorsed and returned, and one for the balance to claimant."

A legitimate inquiry might perhaps be made as to why the larger check was to be indorsed by the claimant and returned to the company. Was the company, under its alleged option, selecting itself as the principal beneficiary?

The motion to set aside the verdict and for a dismissal of the complaint must be denied, and the plaintiff may enter judgment.