SARAH McALPINE v. FIDELITY & CASUALTY COMPANY OF
NEW YORK.[1]

July 28, 1916.

Nos. 19,653 — (74).

**Appeal from order granting new trial — errors available in support of order.**

1. Upon the appeal of the defendant from an order granting the plaintiff's motion for a new trial, after verdict for the defendant, where the motion was granted because of errors of law occurring at the trial, and the order so stated, the plaintiff may support the order by showing other errors, if properly raised, than the specific ones because of which the new trial was granted; but upon such appeal the plaintiff cannot question the sufficiency of the evidence to sustain the verdict.

**Accident insurance — misrepresentations as to age, etc., prior to act of 1913.**

2. In an action on an accident policy the provisions of R. L. 1905, § 1623 (G. S. 1913, § 3300), relative to misrepresentations by the insured, control, and not the provisions of R. L. 1905, § 1693 (G. S. 1913, § 3467), relative to misstatements as to age, physical condition and family history in an application where the policy is issued without previous medical examination or without the knowledge or consent of the insured, the policy having been written and the death claimed to be accidental having occurred prior to the going into effect of Laws 1913, c. 156,

[1] Reported in 158 N. W. 967.

section 6 of which provides what shall be the effect of a false statement in an application for an accident policy.

**Pleading — election between defenses — issues — burden of proof.**

3. In an action on an accident policy for death resulting through accidental means, the defendant alleged that the death was caused by suicide, and, further, that it was caused by the beneficiary. The court denied the plaintiff's motion that the defendant be required to elect upon which claim it would rely upon the ground that the two were inconsistent. The ruling was correct. The general rule relative to inconsistent defenses will not be applied in a case like this, so as to prevent a meritorious defense or work manifest injustice. In an action on an accident policy the issue is upon the question of accident and the affirmative is upon the plaintiff. Such claims as those named may be shown under a general denial in disproof of accident. They are not affirmative defenses like misrepresentation or breach of warranty, nor are they affirmative defenses based upon an exception, as, for instance, suicide in a straight life policy. The affirmative issue, upon which the right of recovery rests, is upon the fact of accident.

**Insurance — cause of death — burden of proof.**

4. In such action the burden of proving that the death of the insured was caused by a third person, not the beneficiary, this constituting an accident within the meaning of the policy, is upon the plaintiff.

**Grant of new trial error.**

5. There were no errors at the trial and a new trial should not have been granted.

Action in the district court for St. Louis county to recover $50,000 upon defendant's policy insuring John McAlpine against death by accident. The amended answer set up certain false representations by the insured, and alleged that the same were known by him to be false and were made by him with actual intent to deceive defendant, and that it relied upon the representations in issuing the policy and that the same materially affected the acceptance of the risk and hazard assumed by the defendant. The answer further alleged that defendant was informed and believed that the death of the insured was caused by the wrongful and intentional act of plaintiff. Plaintiff obtained an order requiring defendant to show cause why it should not be required to elect as between the defenses set up in the amended answer and the order was discharged. The case was tried before Cant, J., who at the close of the testimony denied

134 M.—13.

motions by each party for a directed verdict in his favor, and a jury which returned a verdict in favor of defendant. From an order granting plaintiff's motion for a new trial, defendant appealed. Reversed.

*Briggs, Thygeson & Everall, Monte Appel, Theodore Hollister* and *Abbott, MacPherran, Lewis & Gilbert,* for appellant.

*A. E. McManus* and *William M. Steele,* for respondent.

DIBELL, C.

Action on a policy of accident insurance on the life of John McAlpine in which his wife, the plaintiff, was the beneficiary. There was a verdict for the defendant. The court granted the plaintiff's motion for a new trial. The defendant appeals from the order granting it.

The motion for a new trial was based upon several grounds, including that of the insufficiency of the evidence to sustain the verdict. The court granted the motion, upon the ground that it erred in charging the jury relative to the effect upon the policy of a misrepresentation or misstatement by the insured of his physical condition. In its order it stated that it was granted exclusively upon the ground of errors occurring at the trial. The following questions are presented:

(1) Whether on this appeal the plaintiff may support the order by showing errors, properly raised, other than the one for which a new trial was granted.

(2) Whether the court erred in instructing the jury relative to the effect of a misrepresentation or misstatement by the insured of his physical condition.

(3) Whether the court erred in refusing to require the defendant to elect whether it would rely upon its claim of suicide or upon its claim that the beneficiary was responsible for the death of the insured.

(4) Whether the court erred in charging the jury that the burden of proving that the insured was killed by some third person other than the beneficiary was upon the plaintiff.

(5) Whether there were other errors justifying the granting of a new trial.

If the first receives a negative answer those other than the second do not require consideration. If it is answered in the affirmative all are for consideration.

1. The plaintiff claims that there were other errors than the one made the basis of the court's order granting the new trial. The plaintiff may support the order upon any error of law properly raised justifying the granting of the motion. Morrow v. St. Paul City Ry. Co. 65 Minn. 382, 67 N. W. 1002; Langen v. Iverson, 78 Minn. 299, 80 N. W. 1051; Poirier Mnfg. Co. v. Griffin, 104 Minn. 239, 116 N. W. 576. Under Laws 1913, p. 699, c. 474, § 1, subd. 4 (G. S. 1913, § 8001, subd. 4), the sufficiency of the evidence to sustain the verdict is not reviewable on the plaintiff's appeal. See Montee v. Great Northern Ry. Co. 129 Minn. 526, 151 N. W. 1101; Heide v. Lyons, 128 Minn. 488, 151 N. W. 139.

2. The defendant claimed that in his application Mr. McAlpine misrepresented or misstated his physical condition. The court at the request of the plaintiff instructed the jury as follows:

"Any misrepresentation made by John McAlpine in the negotiation of the policy sued upon shall not be deemed to be material nor shall the same defeat recovery on the policy or prevent its attaching unless you find that he, John McAlpine, made the same with intent to deceive and defraud the defendant, or unless the matter misrepresented increased the risk of loss."

This is the substance of R. L. 1905, § 1623 (G. S. 1913, § 3300), which is as follows:

"No oral or written misrepresentation made by the assured, or in his behalf, in the negotiation of insurance, shall be deemed material, or defeat or avoid the policy, or prevent its attaching, unless made with intent to deceive and defraud, or unless the matter misrepresented increases the risk of loss."

It is claimed by the plaintiff that this section does not apply to an accident policy, but that section 1693, which reads as follows, is applicable:

"In any claim upon a policy issued in this state without previous medical examination, or without the knowledge or consent of the insured, or, in case of a minor, without the consent of his parent, guardian, or other person having his legal custody, the statements made in the application as to the age, physical condition, and family history of the insured shall be valid and binding upon the company, unless wilfully false or intentionally misleading." R. L. 1905, § 1693 (G. S. 1913, § 3467).

Upon the motion for a new trial the court was of the opinion that section 1693 appled and that it was in error in charging section 1623.

For this reason it granted a new trial. Both of these sections appear in the insurance code of 1895. Laws 1895, pp. 400, 429, c. 175, §§ 20, 71. The Massachusetts statute has provisions of the same effect. R. L. (Mass.) c. 118, §§ 21, 73. We have not found in Massachusetts or elsewhere a construction of them.

There is a kind of life insurance where no medical examination, such as is usual with life insurance companies, is required, and which is sometimes taken without the knowledge of the insured. It goes under the general designation of industrial life insurance. It is not accident insurance, nor casualty insurance, nor workmen's compensation. The premiums are small, often five cents a week or some multiple thereof, or other small amount paid monthly. The average amount of the insurance is small—hardly more than sufficient to pay burial expenses and give slight temporary relief. The agents of the insurance company solicit the insurance and call weekly or monthly and make collections. Sometimes insurance is taken, or in the past it has been taken, without the knowledge of the insured. The companies engaging in it write child insurance. In a way the insurance is a sort of family insurance intended as a protection against family misfortune, or as an inducement to thrift and saving, and often all members of the family are insured. While the periodical premiums are small the insurance is not cheap. On the contrary, owing partly to the character of the risks and lack of discrimination in taking them and partly to the cost of administration, it is expensive. With the particular characteristics of it we are not now concerned. It is enough to know that it is a kind of insurance in common use and familiar to legislative bodies and of the general character stated. There are millions of this insurance in Minnesota.

Detailed information relative to it may be obtained from the following sources: Insurance (Industrial) 11 Americana; 14 Enc. Brittanica 671; Henderson, Industrial Insurance, 149; Willoughby, Workmen's Insurance, 212; Improvements in Industrial Life Insurance, 15 Am. Jour Soc. 478-501; Dryden, Life Insurance, 19-117; Zartman & Price, Yale Readings in Insurance, 384-399; Hoffman, History of Prudential Insurance Co.; Industrial Insurance, 26 Ann. Am. Acad. Pol. & Soc. Sci 103; Bunyon, Law of Life Assurance, 308-323; Macgillivray, Ins. Law 22; 6 Testimony Legislative Insurance Investigating Committee, New

York 1905, pp. 4874-4974, 5023-5075. Many reported cases illustrate industrial insurance. Thomas v. Prudential Ins. Co. 158 Ind. 461, 63 N. E. 795; Floyd v. Prudential Ins. Co. 72 Mo. App. 455; Jenkins v. Sun. Life Ins. Co. 120 Ky. 790, 87 S. W. 1143; Ferretti v. Prudential Ins. Co. 49 Misc. 489, 97 N. Y. Supp. 1007; Shea v. U. S. Industrial Ins. Co. 23 App. Div. 53, 48 N. Y. Supp. 548; Home Friendly Society v. Roberson, 100 Md. 85, 59 Atl. 279; Metropolitan Life Ins. Co. v. Schaffer, 50 N. J. Law, 72, 11 Atl. 154; Jones v. Prudential Ins. Co. 173 Mo. App. 1, 155 S. W. 11; Burke v. Prudential Ins. Co. 221 Mass. 253, 108 N. E. 1069. In Murphy v. Metropolitan Life Ins. Co. 106 Minn. 112, 118 N. W. 355, there was involved an industrial life policy, carrying a premium of five cents per week, having the usual characteristics, except that there was some sort of an examination which was construed to be a medical examination within section 1693. Sometimes a medical examination is had, but usually there is only an "inspection" which is a general observation of appearance and conditions. See 6 Testimony Legislative Insurance Inv. Com. New York 1905, pp. 4876-4881. Some states now require regular medical examinations. Industrial insurance is taken usually by wage earners who have a more or less steady but small income. The character of the people taking it and their need of protection are sometimes mentioned in the cases. Floyd v. Prudential Ins. Co. 72 Mo. App. 455; Foryciarz v. Prudential Ins. Co. 158 N. Y. Supp. 834; Public Sav. Ins. Co. v. Manning, 61 Ind. App. 61, 111 N. E. 945. In Baltimore Life Ins. Co. v. Howard, 95 Md. 244, 52 Atl. 397, the court said of industrial insurance: "The policy holders of this kind of an insurance company are generally poor and illiterate people who most need protection against harsh, technical forfeitures, because least able to appreciate their significance and because easily induced by the conduct of the company to act upon the belief that their policies are in force." The possibility of abuses is recognized. It has been held that policies taken without the consent of the insured are void. Vance, Insurance, 145; note 53 L.R.A. 817; note 54 L.R.A. 225; 11 Dec. Dig. Ins. § 198 (3). Some statutes require the assent of the insured. See Richards, Insurance Law (3d ed.) 702.

There has been some actual and more threatened hostile legislation and some regulative legislation. At the best it is expensive insurance,

giving needed help in time of distress. Those taking it are often un-lettered, usually have no knowledge of the nature of an insurance con-tract or the effect of a misstatement, and however honest their purpose they may express themselves inaccurately, or may speak English indif-ferently, and may be misunderstood, or the soliciting agents who get their compensation from collections and gain through an increase of policies may not be cautious or conscientious. It was the purpose of the legis-lature to prevent misstatements as to age, physical condition and family history avoiding policies of this kind except when "wilfully false or in-tentionally misleading." It was not its purpose to favor ordinary acci-dent policies or to put them on a more advantageous basis than ordinary life policies. It may be noted that in Price v. Standard Life & Accident Ins. Co. 90 Minn. 264, 95 N. W. 1118, section 1623 was applied to an accident policy. Section 1693 was not mentioned. It is not questioned but that section 1623 applies if section 1693 does not. Section 1623 furnishes a rule more favorable to the policyholder than without a statute the rule would be. It should be noted that the policy in suit was written and that death occurred prior to the going into effect of Laws 1913, p. 188, c. 156. Section 6 of this act specifically provides what shall be the effect of a false statement in an application for a health or accident policy. We are not now concerned with its construction. The existence of industrial life insurance of the general characteristics noted furnishes an adequate explanation of the legislation embodied in section 1693 and determines its proper application. Their connection is not fanciful. The conclusion is not to be resisted that the statute was enacted in view of in-dustrial insurance. There may be other kinds of life insurance, such as group insurance, to which the statute applies, but we are not now con-cerned with it. Nor is it necessary to determine whether, looking at the statute alone with no aid from the history of insurance in ascertaining its application, section 1693 should be held to apply only to life policies or life companies as distinguished from accident companies or accident policies. We hold that section 1623 applies to the policy in suit, that the court correctly gave it in its charge, and that a new trial should not have been granted because it was given.

We take it from the record that counsel for the defendant did not bring to the attention of the trial court the existence of industrial life

insurance and the bearing of such insurance upon the construction of section 1693.

In view of the construction adopted we find it unnecessary to discuss the question whether the plaintiff having invited the instruction given can complain of error in giving it. The settled general rule is that a party cannot avail himself of invited error. See 3 Cent. Dig. App. & Err. §§ 3602-3604; 2 Dec. Dig. App. & Err. § 882 (1), 882 (12); 2 R. C. L. p. 238, § 198; 2 Enc. Pl. & Pr. 523. We only remark that, conceding the right of the court to review, in a special case, the correctness of an instruction at the instance of a party who has procured it to be given, a new trial should not be granted unless the charge was substantially wrong and apparently prejudicial in result. It is probable that the claimed misstatement or misrepresentation was not the important question in the case from the viewpoint of the jury.

3. The policy in suit insured Mr. McAlpine against: "Bodily injury sustained during the term of one year from noon, standard time, of the day that this policy is dated, through accidental means (excluding suicide, sane or insane, or any attempt thereat, sane or insane), and resulting directly, independently and exclusively of all other causes, in * * * (c) death."

The plaintiff claimed in her complaint that the death of McAlpine resulted from accidental means. To recover it was necessary to prove it. McAlpine was found dead in the basement of his home between three and four o'clock in the morning of August 15, 1913, with a fatal bullet wound in his head. His revolver was close by with one chamber empty. The circumstances were not conclusive. As between accident and suicide the presumption favored accident. The defendant alleged suicide and alleged further that the death of the insured was caused by the beneficiary. In either event the plaintiff could not recover. At the opening of the case the plaintiff moved that the defendant be required to elect on which it would rely upon the ground that the two were inconsistent. This motion was denied and the plaintiff claims it was error justifying the order granting the new trial. Our statute is as follows:

"The defendant may set forth by answer as many defenses and counterclaims as he has. They shall be separately stated, and so framed as to show the cause of action to which each is intended to be opposed." R. L. 1905, § 4132 (G. S. 1913, § 7758).

Under our decisions separate defenses must be consistent. This is not an express requirement of the statute. It has come about by construction. It is not a universal holding, nor where held is the principle uniformly applied. See Abbott, Civ. Jur. Tr. (3d ed.) 119; Pomeroy, Code Remedies (4th ed.) § 598; Bliss, Code Pl. §§ 342-344; Phillips, Code Pl. §§ 261-266; 2 Estee, Pl. § 3381; 1 Enc. Pl. & Pr. 852-860; note 48 L.R.A. 177; 16 Dec. Dig. Pl. § 93; 39 Cent. Dig. Pl. § 189. The objection upon the ground of inconsistency is not favored. Rees v. Storms, 101 Minn. 381, 112 N. W. 419. The purpose of the code system of pleading is to get the parties to a speedy trial upon the merits. It is not to prevent the hearing of a cause of action or the interposition of a defense. We are not so much concerned with the development of an artistic and symmetrical system of pleading as we are with having a practical procedure which will result in a speedy determination of disputes upon the facts.

It is sometimes said that whether both defenses can be true is the test of their consistency. An examination of the cases shows that whatever the test, defenses are not often held inconsistent. Thus it is held not inconsistent to deny a slander and allege matter in mitigation. Warner v. Lockerby, 31 Minn. 421, 18 N. W. 145, 821. Or to deny the rendition of services by the plaintiff and allege payment. Steenerson v. Waterbury, 52 Minn. 211, 53 N. W. 1016. Or to deny the execution of a note and allege that it was procured by fraud. Bank of Glencoe v. Cain, 89 Minn. 473, 95 N. W. 308. Such defenses in general amount to a general denial coupled with a plea in confession and avoidance. There is an inconsistency in fact between a general denial and a plea in confession and avoidance; but the inconsistency does not prevent the interposition of both. When the rule of consistency, technically applied, prevents the interposition of a fair defense, it must yield to the insistent demand of the law that a party be given a hearing on all his causes of action and all his defenses. This is the paramount consideration. Substantive rights must not be sacrificed to preserve a rule no more important and no better accredited than the consistency rule.

Naturally enough the legal mind revolts at a rule of pleading which requires a defendant to choose which of two honest defenses he will interpose, though both cannot be true, and neither is within his know-

ledge, at the peril of losing all if he mistakes, for when called upon to elect he is having his final day in court. We share the view of the trial court that the situation was not one requiring an election which it expressed as follows: "It is true that the two defenses cannot both be true or correct; but it is also true that the defendants do not very well know which one may be correct; and either one would be a good defense if true. * * * It would be an injustice to limit them to one when they cannot know which one, if either, is true. They should have an opportunity some time to rely upon the other, and we cannot have two trials of the same matter. Therefore the motion to elect should * * * be denied."

Again, the affirmative of the issue tendered, that is, death by accident, was upon the plaintiff. In Huestis v. Aetna Life Ins. Co. 131 Minn. 461, 155 N. W. 643, where a similar accident policy was involved, and where the pleadings were similar, it was said that the plaintiff must prove the accident and that it was not incumbent upon the defendant to prove suicide. This is the result of the following authorities, some of which the court cited: Carnes v. Iowa State Traveling Men's Assn. 106 Iowa, 281, 76 N. W. 683, 68 Am. St. 306; Whitlatch v. Fidelity & Casualty Co. 149 N. Y. 45, 43 N. E. 405; Fidelity & Casualty Co. v. Weise, 182 Ill. 496, 55 N. E. 540; Laessig v. Travelers' Protective Assn. 169 Mo. 272, 69 S. W. 469; Merrett v. Preferred Masonic Mut. Acc. Assn. 98 Mich. 338, 57 N. W. 169. "To entitle the plaintiff to recover at all, he must prove by a preponderance of the evidence that his was an accidental injury, because the policy only insured him against such injuries. It is true that when an injury is shown the presumption arises that it was not self-inflicted, and to defeat a recovery the defendant must negative this presumption; but, in cases where the very foundation of the action is accidental injury, the presumption which the law raises is only an aid to the other evidence on the subject, and does not operate to shift the burden of proof on the entire issue to the defendant. * * * Much of the seeming conflict in the adjudicated cases on the question of the burden of proof, where a presumption arises in favor of either party, has grown out of the failure to clearly define the weight to be given to the presumption. It is quite commonly said that the burden is upon the defendant to overcome that presumption, but it is still true that after all the evidence is before the jury the burden rests where it did in

the beginning. * * * If the defense were based upon the breach of some particular condition of the policy, or upon some exception therein, it would fall within the rule announced in another line of cases." Taylor v. Pacific Mut. Life Ins. Co. 110 Iowa, 621, 82 N. W. 326. The circumstances surrounding the death of the insured being shown, a presumption may arise that it was accidental rather than suicidal, and as between accident and suicide the law for logical and sensible reasons supposes accident. The presumption may obviate the necessity of further proof, or its force may be such that in a particular case a verdict may be directed for the plaintiff, but it does not change the burden in the first instance. This policy is an accident policy. To justify a recovery it must be shown that death was caused by accidental means. It is not an ordinary life policy, where liability arises from death except in certain cases, as suicide for instance, where death being shown, liability follows, unless there is an affirmative showing that the death is within an exception of the policy. In such cases proof of death is proof of a cause of action. We have not overlooked Starr v. Aetna Life Ins. Co. 41 Wash. 199, 83 Pac. 113, cited by plaintiff, nor the authorities collected in a note thereto in 4 L.R.A.(N.S.) 636. We have stated the doctrine approved in Huestis v. Aetna Life Ins. Co. supra.

It was not necessary for the defendant to allege suicide or that the death of the insured was caused by the beneficiary. Either could be proved under a general denial. Neither was an affirmative defense such as is a claim of misrepresentation or breach of warranty or suicide under a policy excepting it from the risk. The issue was upon the question whether Mr. McAlpine's death was caused by accidental means. The affirmative of this issue was upon the plaintiff. Any evidence negativing accidental means as the cause was admissible. It was not necessary, to defeat recovery, that the jurors unite in a belief of suicide, or of death caused by the beneficiary. To justify a recovery it was necessary that the jurors unite in a belief that accidental means caused the death. There was the issue.

The court correctly ruled in denying the plaintiff's motion to require the defendant to elect between suicide and death caused by the beneficiary.

4. It was a contention of the plaintiff that the deceased was killed by

a third person, suggested to be a burglar prowling about the house, and it is conceded that if death was so caused there was liability under the policy. The court charged the jury that the burden of proving that death was so caused was upon the plaintiff. There can be no serious question of the correctness of this instruction. If death was so caused there was liability, because it was death by accidental means. The burden of the issue was on the plaintiff. From the circumstances of Mr. McAlpine's death no presumption arose that he was killed by some third person. It was a matter of proof. What is said in the preceding paragraph upon the affirmative issue in the case and the burden of proof makes further discussion unnecessary.

5. We find no error in the rulings on the proposed testimony as to experiments made with the gun of the insured. The experiments sought to be shown were made by shooting against white paper. The plaintiff had given the result of other experiments with a substance furnishing a better illustration. The most that can be urged is that such testimony might have been received without error. It was properly and wisely excluded.

The court did not err in submitting to the jury whether the benefici- ary was concerned with the death of the insured. The evidence was slight but not negligible.

We have examined all the contentions of the plaintiff. The trial was without error. It was conducted with entire fairness to the plaintiff. A new trial should not have been granted.

Order reversed.