In the Matter of the Estate of JOHN PIOTROWSKI, Deceased.

Surrogate's Court, Niagara County, July 12, 1934.

*Hunt & Carrie,* for the petitioner.

*Lee & Otis,* for the respondents Leo Kwapisz and another.

GOLD, S.   This is a discovery proceeding brought under section 205 of the Surrogate's Court Act to obtain possession of a certain industrial life insurance policy issued by the respondent Metropolitan Life Insurance Company covering the life of decedent.

The respondent Metropolitan Life Insurance Company, through its attorney, appears in said proceeding and admits that it issued an industrial policy upon the life of decedent in the sum of $800, and that it has not paid the same; but that it is ready to pay the money to whomever the court directs.

The petitioner Mary Piotrowski claims the policy and the proceeds thereof as the administratrix and widow of John Piotrowski, the decedent.

The respondent Mary Kwapisz, sister of the deceased, admits possession of the policy and premium receipt book; and claims that she, and not the administratrix, is entitled to the policy and proceeds thereof.

The industrial insurance policy contains the usual facility of payment clause reading in part as follows:

" The Metropolitan Life Insurance Company in consideration of the payment.............doth hereby agree, subject to the conditions below, to pay upon receipt of due proof of the death of

the Insured and upon surrender of this Policy and evidence of premium hereunder, the amount stipulated in said Schedule, to the executor or administrator of the insured, unless payment be made under the provisions of the next succeeding paragraph.

"The Company may make any payment or grant any non-forfeiture privilege provided herein to the Insured, husband or wife, or any relative by blood or connection by marriage of the Insured, or to any other person appearing to said Company to be equitably entitled to the same by reason of having incurred expense on behalf of the Insured, or for his or her burial; and the production of a receipt signed by either of said persons, or of other proof of such payment or grant of such privilege to either of them shall be conclusive evidence that all claims under this policy have been satisfied."

The policy is dated August 1, 1930, about two and one-half years prior to the death of the insured. At this time deceased was living with his sister, Mary Kwapisz, and her husband at the city of Niagara Falls, N. Y., and he continued making his home with them until his death. For some seven or eight years he had lived apart from his wife, the petitioner, who had moved to the city of Buffalo, N. Y. The reason for their separation does not appear from the evidence.

At the time of taking out the policy and before paying the first premium, decedent instructed the agent of the company to be sure to name his sister, Mary Kwapisz, as beneficiary, because he lived with her and stated: "I owe her plenty of money and if I die she can collect it." From the evidence it appears that the agent told decedent that his sister would be the beneficiary.

The agent who sold the insurance testified: "I told him whoever paid the premium or held the policy and especially relatives in the blood could collect the claim or policy, because he wanted to know to whom that policy belongs and I explained it that way." In answer to the question, "Where did you get the authority to say that?" he answered, "At our office and it was a part of our selling business to practice that way."

The first monthly premium of two dollars and sixty cents was paid by decedent. The balance of the premiums were paid by moneys belonging to Mary Kwapisz, the total amount paid upon the policy prior to the death of decedent amounting to eighty dollars and sixty cents.

While the local superintendent denied that he had given the agents specific instructions, he admitted that it was the practice and usage of the company to pay the proceeds of a policy to a blood relation who was a policyholder and who paid the premiums.

In addition to the payment of the premiums, Mary Kwapisz also paid the funeral expenses and doctor's services, amounting to $383.77.

The petitioner's sole claim to the policy and the proceeds thereof is based upon the fact that she was appointed administratrix of decedent's estate in this court.

Respondent claims that the promise of the agent to the insured constituted respondent a third party beneficiary. She claims that the evidence of the antecedent debt or obligation and promise constitute all the essential elements necessary to establish this respondent as a third party beneficiary under the well-known case of *Lawrence* v. *Fox* (20 N. Y. 268); that respondent was the person intended by the promisor to the promisee to be the beneficiary under their contract; that there was an antecedent debt or obligation running from the promisee to the beneficiary, which debt or obligation the promisee was seeking to get discharged by giving to the beneficiary the benefit of the promisor's promise made to the promisee.

From all the evidence in the case, only one conclusion can be reached with reference to the intent of the deceased, and that was to have moneys due under this policy paid to the respondent Mary Kwapisz at the time of his death. He had not lived with his wife for a number of years and it is quite certain that he would not have taken out a policy that would have inured in any way to her benefit. He had lived with his sister for some time prior to the issuing of the policy, and stated at the time of taking out the policy that he owed her money and wanted her named as beneficiary. In other words, he wanted her to receive the proceeds. He was assured of this fact by the agent of the company. Had this assurance not been given, no policy would have been taken out and there would have been no litigation in this court with reference to the ownership thereof.

Respondent also claims that during the lifetime of deceased, the company made a valid present election to pay the proceeds of the policy to the respondent.

With reference to the authority of agents, *Shea* v. *United States Industrial Ins. Co.* (23 App. Div. 53) holds as follows: " ' In determining the authority of agents the instructions are not necessarily controlling; that is to say, if you instruct your agent to do one thing or to exercise only limited authority, and you knowingly habitually suffer him to exercise greater authority, you are bound by the authority you allow him to exercise, your instruction to the contrary notwithstanding.' "

The superintendent in answer to the question, " You have testified quite generally that the Company would pay a blood

relative who is a policy holder and who paid the premiums. Now, didn't you say that that was the general practice and usage of the Company?" stated, " Yes."

" As the company, however, made its absolute agreement with the plaintiff that she should be the beneficiary, we think such agreement had the force of a present election upon the part of the company to exercise the option in this regard in favor of the plaintiff. This does not change or vary the terms of the policy; it is an agreement in addition thereto and entirely consistent therewith, which may rest in parol and be enforced according to its terms. * * * It was no more than an agreement upon the part of the company to presently make its election, instead of waiting until a loss had occurred. In this view of the case the plaintiff became entitled to have the benefits of the insurance for which she had paid and which the defendant had agreed she should receive." (*Shea* v. *United States Industrial Ins. Co., supra.*)

The theory laid down in the above case is followed in *Matter of Dickman* (142 Misc. 207); *Matter of Lichtman* (148 id. 228); also in *Tarasowski* v. *Prudential Insurance Company* (113 id. 248).

In the latter case the court, commenting on *Shea* v. *United States Industrial Ins. Co.* (*supra*), stated as follows: " In the *Shea* case the court said that the promise to pay the party procuring the policy and paying the premiums ' *had the force of a present election upon the part of the company to exercise the option in this regard in favor of the plaintiff. This does not change or vary the terms of the policy; it is an agreement in addition thereto, and entirely consistent therewith, which may rest in parol and be enforced according to its terms.*'

" We do not understand that this doctrine has been modified or overruled by any decision, at least by any decision of the courts of this State."

In the cases cited by the petitioner there was no proof that the insurance company had made any promises with reference to the payment of proceeds of the policies when the same were taken out.

One of the cases cited was a decision handed down by this court, to wit, *Grabowski* v. *Lotko* (135 Misc. 747). In that particular case I found as follows: " In the present case I find no testimony bearing out the claim that a positive agreement was made between the insurance company and the defendant to pay the proceeds of the policy to the defendant upon the death of decedent.

" There is no question but that she took out the policy, expecting that the money would be paid to her, but I find no such positive agreement made."

The insurance agent having made a promise to the insured at the time of the taking out of the policy that his sister with whom he was then living would be the beneficiary, and the policy having been issued and received under that understanding and agreement, the company is bound to recognize and carry the same into effect. There was a present election at the time the policy was issued. Otherwise, as I have stated above, no policy would have been issued by the company or accepted by the insured. Subsequent statements made by the insurance agent to the sister, that she would receive the proceeds upon the death of the insured, have the effect of corroborating the understanding and agreement had between the insured and the company at the time of the issuance of the policy.

I, therefore, hold that Mary Kwapisz is entitled to the policy and the proceeds thereof, and the prayer of the petitioner is denied.

Let a decree be entered accordingly.