SMITH, F. W. C.
*vs.*
SMITH.

PRISCILLA SMITH, F. W. C., *vs.* SMITH.

APPEAL FROM THE PARISH COURT, FOR THE PARISH AND CITY OF
NEW-ORLEANS.

Where a slave was taken from Louisiana, with the consent of the owner,
to France, although afterwards sent back here, she was thereby entitled
to her freedom, from the fact of having been taken to a country where
slavery is not tolerated, and where the slave becomes free by landing on
the French soil.

The Supreme Court will not consider one decision alone as finally settling
the jurisprudence on any given point or question of law, which is not
settled by positive legislation.

When owners go out of the state with their slaves, and afterwards eman-
cipate them, they must do so according to the laws of the place where
the emancipation takes place.

This is a suit for freedom.    The plaintiff was the slave of
the defendant for life, when, in the spring of 1835, the latter
went to France, taking Priscilla with her as her servant.
After residing in Paris some months, Priscilla was sent back
by her mistress to Louisiana, in the ship Garonne, and arrived
in New-Orleans in November, 1835.

She alleges, that, by going to France with the consent of
her mistress, she became free, because slavery is not per-
mitted there, and that the moment she landed in that
country she became free.

The defendant resists the claim to freedom, and persists in
holding the plaintiff as a slave.

Upon this issue the cause was tried.

EASTERN DIST.   Witnesses were introduced to show what were the laws of
*May*, 1839.    France in relation to slavery.

SMITH, F. W. C.      *E. Caillard*, Esq., being called on the part of the plaintiff,
*vs.*           says he studied law in France; that there is no slavery per-
SMITH.          mitted there.   As soon as a slave lands on the French soil,
he is free by the mere fact.   The law which established this
principle was enacted in 1791, and has not been repealed.
In 1825, the slave trade, which was permitted in France,
was prohibited.

The plaintiff was taken to France with the view of stay-
ing there with her mistress, but, on her entreaty, she was
sent back in the ship Garonne, and hired out in New-Orleans
on wages, for account of her mistress.

The parish judge was of opinion that the plaintiff, being
domiciled in Louisiana, must be governed and controlled by
the laws of this state, in her claim for freedom; that the
mere fact of going to France, and returning to Louisiana,
could not take the case out of the general rule.   Judgment
was rendered in favor of the defendant, and the plaintiff
appealed.

*Mace*, for the plaintiff, contended that the plaintiff was
entitled to her freedom from the fact of being taken to France
by her mistress with the view of residing there.   A slave
once gaining freedom, cannot afterwards be reduced to
slavery.   *Marie Louise, f. w. c.,* vs. *Marot et al.,* 9 *Louisiana
Reports,* 473; *Merry* vs. *Chexnaider,* 8 *Martin, N. S.,* 699;
*Lunsford* vs. *Coquillon,* 2 *Ibid,* 401; *Langlade's Repertoire de
la Nouvelle Legislation,* vol. 2, p. 442, *verbo Esclavage; La
Charte Constitutionnelle,* art. 1, 4, 5 *and* 8.

*Mazureau*, for the defendant, contended that the judgment
of the Parish Court was correct, and ought to be confirmed;
that, even admitting the laws of France are to govern this
case (which he denied), they do not show that a *black slave,*
or *any mulatto slave,* is free the moment he is landed in
France.   The law of 1791, it is true, says, " *Tout individu
est libre aussitôt qu'il est en France;*" but Merlin shows that,

by a law of 1802, slavery has been re-established in all the French colonies, as it was by law anterior to 1789; and he refers to the article " *Gens de Couleur*," where we find a total prohibition of any black, mulatto, or person of color of any sex, being brought within the French republic, on pain of being arrested and detained in prison until they are sent out of the country. From this it must be inferred, that the law of 1791 was no longer in force after 1802. *Merlin's Repertoire de Jurisprudence, verbo Esclavage.*

2. The laws of Louisiana are the only ones our citizens are bound to know, and they should govern in deciding this case. The defendant was ignorant of the laws of France, and could not be presumed to know that if she took her slave there it would be emancipated. It was certainly contrary to her intention, for, as she was travelling, she took her servant to attend on her, and not to become free.

3. The *Statut Personel* is the law which regulated the condition of the plaintiff here, and which followed her every where. Being a slave here, she was a slave whereever she went. See *Merlin's Repertoire, verbo Statut Personnel,* and the effect of that statute.

4. These principles have been recognized by the Supreme Court of the United States, in the case of *The United States* vs. *Skiddy,* and the seizure of the ship Garonne, in which Priscilla was sent back from France to Louisiana *a slave,* and in the same condition in which she went out to France. That court expressly recognizes her as a slave domesticated in Louisiana, in consequence of which it was no violation of the laws of the United States to bring her back into the country as a slave. See 11 *Peters' Reports,* 77.

5. There is no law in Louisiana to prevent the defendant from taking her slave to France, and returning with her, or sending her back and holding her in slavery. Taking or sending a slave to a country where no slavery is permitted, is not one of the modes provided by our laws to emancipate slaves. The manner pointed out by these laws is the only way in which slaves can be emancipated; all other modes of emancipation are null and void. 1 *Moreau's Digest,* 455.

6. By the act of 1830, slaves that are emancipated must quit the state; whence it is concluded that any slave, on being emancipated here since that act, has no right to be here, and ought not to be heard in a court of justice. See *Session Acts of* 1830, *March* 16, *sec.* 10.

*Martin, J.*, delivered the opinion of the court.

The plaintiff is appellant from a judgment which rejects her claim to her freedom.

She admits she was once the slave of the defendant, who took her to France, and with whom she remained for three or four months, after which she was sent back to this state.

*Where a slave was taken from Louisiana, with the consent of the owner to France, although afterwards sent back here, she was thereby entitled to her freedom, from the fact of having been taken to a country where slavery is not tolerated, and where the slave became free by landing on the French soil.*

This case cannot be distinguished from that of *Marie Louise, f. w. c.,* vs. *Marot et al.,* 9 *Louisiana Reports,* 473. In both cases it was proven that "there is no *slavery* permitted in France; that, as soon as a slave lands on the French soil, he is free by the mere fact."

The judge of the Parish Court has admitted, that if the decision of this court, in the case of Marie Louise, be correct, it affords a legitimate rule by which the present case is to be determined; but he contends that a single decision of this court does not prevent the re-examination of the principle recognized when it comes up the second time, and is presented to the consideration of the court.

The case of Marie Louise is not the first in which the Supreme Court of this state has been called upon to revise the judgment of an inferior court, in relation to the right to the freedom of a slave, in consequence of his having been carried by a former master into a country the laws of which do not tolerate slavery. About fifteen years ago, the court of the third judicial district having recognized the right to freedom of a slave, carried from Kentucky into the state of Ohio by her former owner, the person who claimed her as his property deeming himself aggrieved, sought relief by appeal to this court. See *Lunsford* vs. *Coquillon*, 2 *Martin, N. S.,* 401.

That case received an attentive consideration, and the judgment of the District Court was affirmed. The question

was not *res nova* in the jurisprudence of these states; the plaintiff relied on a decision of the Court of Appeals of the state of Kentucky, which fully supported her claim.

Ten years after that decision, this court expressed the opinion, in the case of *Louis, f. m. c.*, vs. *Cabarrus et al.*, 7 *Louisiana Reports*, 170, that the judge *a quo* erred in refusing to charge the jury, "that proof of the residence of the plaintiff in the state of Ohio during the space of two or three years, unconnected with any other proof, was insufficient in law to establish freedom." A negative pregnant with the affirmative, that such a residence, connected with other proof, to wit, that it was with the consent, and agreeably to the will of the master, would entitle such slave to his freedom.

In the same case, the judge having charged the jury, "that the consent of the owner that the slave should go into the state of Ohio and perform labor was insufficient to entitle him to his freedom," this court was of opinion that the law was too loosely expressed and indefinitely stated; and that "the consent of the master that the slave should go and perform work and labor in Ohio, does not of *itself* free the slave, though this may be effected *by the slave's going there under this permission.*"

We agree with our learned brother in the Parish Court, that "more than one decision of the supreme judicial tribunal is required to settle the jurisprudence on any given point or question of law;" and accordingly, as there has been three decisions of this court on the question on which he differs from us, we might consider the law as settled by these repeated decisions, in which all the members of the court concurred, and which were in accordance with three judgments of the District Courts; nevertheless, we have attended to the new considerations which have been submitted to us. The counsel for the defendant and appellee contends, that the legislature has provided two modes of emancipation, to wit, that of slaves having attained the age of thirty years and upwards (*Louisiana Code, article* 185, *et seq.*), and of slaves under that age (1 *Moreau's Digest*, 456), and that no emancipation can take place in any other manner.

EASTERN DIST.

*May*, 1839.

SMITH, F. W. C.
*vs.*
SMITH.

The Supreme Court will not consider one decision alone as finally settling the jurisprudence on any question of law, which is not settled by positive legislation.

EASTERN DIST.    This is certainly true of emancipation in the state; but
*May*, 1839.    the legislature has recognized the right of owners to eman-

SMITH, F. W. C.   cipate their slaves in other states.   See. *Session Acts of* 1830,
*vs.*    sec. 16, *p.* 94.
SMITH.

When owners    When owners going out of the state with their slaves,
go out of the
state with their  afterwards emancipate them, they must do so, not according
slaves, and af-   to the laws of Louisiana, but according to the laws of the
terwards eman-
cipate    them,   country where the emancipation takes place.   It has been
they must do so
according to the  further urged, that owners of slaves cannot evade the laws
laws of the place
where the eman-   of this state regulating emancipation by taking them out of
cipation    takes  the state, fraudulently and collusively, with the view of
place.
emancipating them, when the law forbids it, *viz.*, slaves of
bad character, or to avoid giving bond with security required
by law.   To this the answer is, that if the emancipation, in
such a case, is to be declared null and void, it cannot be so
on the application of a party to the collusion and fraud.

It has been said that the plaintiff cannot be heard, because
the law requires emancipated slaves to withdraw from the
state.   To this it may be answered, that the object of the
suit is to procure the means of complying with the law, by
removing the obstacle which the defendant opposes to its
execution; that the obligation to remove from the state has
not the effect of an outlawry; and that the act of 1830,
already cited, authorizes slaves removed from this state, and
emancipated in another state of the Union, to return.   It is
true, the plaintiff in this case obtained her emancipation in
France, and does not therefore come within the letter of
that act.   It is said she comes within the spirit; for the
reason why slaves emancipated in the other states are per-
mitted to return is, that they have their relations, connec-
tions and friends here, whom it would be cruel to prevent
them from rejoining.

The parish judge imagines he has discovered a distinct
feature in the present case, from that of Marie Louise, who
was that of a *statu libera* at the time she left Louisiana,
while the present plaintiff was a slave for life at her de-
parture.   A *statu libera* is a slave until the moment she
becomes free, to all intents and purposes, with the excep-

tions introduced by the code, none of which were invoked in that case.

It does not appear to us that any thing authorized the Parish Court to decide this case on other principles than those settled by our jurisprudence in similar cases.

It is, therefore, ordered, adjudged and decreed, that the judgment of the Parish Court be annulled, avoided and reversed; and that the plaintiff be declared a free woman, and that the defendant be for ever enjoined and prohibited from disturbing her in the enjoyment of her freedom, the latter paying costs in both courts.