SYLVESTER v. METROPOLITAN LIFE INSURANCE CO.

1. INSURANCE—INDUSTRIAL POLICY—DUTY OF INSURER IN MAKING PAYMENT.

Where "industrial" policy provided for "facility of payment" to husband or wife, or to some other person appearing to be "equitably entitled to same by reason of having incurred expense on behalf of insured or for his or her burial," insurer has duty of seeing to it that said money is used for said purpose when paid to one other than husband or wife or personal representative of insured, and that person to whom payment is made is entitled thereto.

2. SAME—DUTY OF INSURER IN DETERMINING WHO IS EQUITABLY ENTITLED TO PROCEEDS.

Insurer was not warranted in finding that woman known to it to be neither widow nor beneficiary was "equitably entitled" to proceeds of "industrial" policy under its terms because she filed proof of death and claimed that she was responsible for medical and funeral bills, where insurer made no investigation, and did not see to it that proceeds were used for purpose stated.

Appeal from Wayne; Gilbert (Parm C.), J., presiding. Submitted June 9, 1931. (Docket No. 34, Calendar No. 35,679.) Decided October 5, 1931. Rehearing denied January 4, 1932.

Assumpsit by Ida Sylvester, administratrix of the estate of Collier Sylvester, deceased, against Metropolitan Life Insurance Company, a foreign corporation, on two life insurance policies. Judgment for plaintiff. Defendant appeals. Affirmed.

*Seabron F. Hall,* for plaintiff.

*Bulkley, Ledyard, Dickinson & Wright (Edgar C. Howbert,* of counsel), for defendant.

As to right to enforce payment under "facility of payment" clause, see annotation in 28 A. L. R. 1350; 49 A. L. R. 939.

SHARPE, J.   The facts in this case were agreed upon.  Quotations are therefrom.  Plaintiff brings this action to recover on two industrial insurance policies, issued to Collier Sylvester, a colored man, in 1917 and 1923, on which the amounts payable at his death, which occurred on November 28, 1926, were the sums of $324 and $512 respectively.  The weekly payments were 20 cents on the former and 40 cents on the latter.  The policies are similar in form.  They provided that, in case of the death of the insured, the company would—

"pay upon receipt of proofs of the death of the insured made in the manner, to the extent and upon the blanks required herein; and upon surrender of this policy and the premium receipt book, the amount stipulated in said schedule, to the executor or administrator of the insured, unless payment be made under the provisions of the next succeeding paragraph.

"The company may make any payment or grant any nonforfeiture privilege provided herein to the insured, husband or wife, or any relative by blood or connection by marriage of the insured, or to any other person appearing to said company to be equitably entitled to the same by reason of having incurred expense on behalf of the insured, or for his or her burial; and the production of a receipt signed by either of said persons, or of other proof of such payment or grant of such privilege to either of them, shall be conclusive evidence that all claims under this policy have been satisfied."

The deceased and Ida Sylvester were married in 1920, and lived in Detroit, where defendant maintained an office.  They separated in 1925, but "were, in fact, quite friendly up until the time of his death."  After their separation, the deceased lived with an unmarried woman named Levada Scott, who

assumed his name and thereafter called herself Levada Scott Sylvester. They lived together as man and wife, "although she would sometimes leave him for short periods of time." On his death, Levada arranged with an undertaker for his funeral, and promised verbally to pay the expense thereof, stating that she was his widow.

Proof of death was made by Levada on the day after his decease. The answers to the questions therein were written by a man "connected with the undertaking company." In answer to the question, "By what right and relationship do you claim the proceeds of the insurance?" she stated, "Widow, beneficiary, and responsible for medical and funeral bills," and gave her address as 512 Watson street, Detroit. An affidavit of the truth of her answers was appended thereto. With these proofs she surrendered the policies and the premium receipt books.

On December 3, 1926, the defendant sent her its check for $826.70, payable to Levada Scott Sylvester, and she indorsed it, thereby signing a receipt therefor, and turned it over to the undertaker, who deducted the amount of his bill, $310, and paid the balance to her.

Ida Sylvester, widow of the deceased, also had a policy in the defendant company. She had always paid the premiums on his policies until their separation, and did so until January 11, 1926. He made the payments thereafter. The defendant's superintendent at Detroit knew that she had been married to the deceased. About a week before his death, when paying her own premium, she—

"inquired about his policies. Two days after the death of her husband, she went to the office of the insurance company where she paid her premiums

and inquired of a lady, an employee of the defendant, as to obtaining payment. This lady said that she could not give her any information, but told her to go to the office on the second floor which was the claim department and also told her that she should bring in the policies and the premium receipt book. Ida Sylvester returned the next day or so and went to the office on the second floor and told an agent there not to pay the policies until he found out if they had been changed. At this time she was informed that the amounts of the policies had been paid and she was shown a receipt signed by Levada Scott Sylvester.

"The company had in its records the name and street address of Ida Sylvester, in connection with her own policies. She lived at the same address all the time, and Mr. Harvey, who at that time was manager of the office where premium payments were made, was at her house twice to write policies on one of her roomers, and on one occasion a few months before Collier's death said that he would tell her if any changes were made in Collier's policies. After Collier's death she talked to Harvey, who stated that he was not the one to know about claims; she stated to Harvey that her husband had always wanted her to have the policies. The agents of defendant make no effort to keep track of the marriages and separations of the various policyholders. The home office of defendant has files on each policy, and these often include the names and addresses. They may be obtained by the local agents if necessary. The local agents know how to check up on the matrimonial status of a policyholder, but they don't do it.

"Levada Scott Sylvester did not show the defendant any receipted funeral bills when she obtained her payment, but she did show that she was obligated to pay the funeral bills, in submitting the proof of death.

"During the insured's last illness his mother,
Mrs. Isabel Sylvester, waited upon him and gave
him money. She knew Levada Scott and knew that
she called herself Levada Scott Sylvester. Levada
Scott did not stay with him continuously, being gone
several times a week.

"About a week before his death the insured told
his mother to get the policies out of his trunk, and
to give them to his wife, Ida. The mother looked
for the policies, but could not find them."

Ida Sylvester, as widow, petitioned for probate of
the estate of deceased, and was appointed adminis-
tratrix thereof. She brings this action to recover on
said policies. She obtained a judgment in the circuit
court for the amount due on the two policies, less the
sum retained by the undertaker. The defendant has
appealed.

While such policies have been issued for many
years, this court has never before been called upon
to place a construction upon a provision therein
similar to that quoted above. It has, however, been
the source of considerable litigation in other States.
A number of insurance companies issue such pol-
icies. They are spoken of as "industrial insurance
policies," as small policies issued in consideration
of weekly payments, in contradistinction to the ordi-
nary insurance, where premiums are payable annu-
ally, semi-annually, or quarterly. *Russell* v. *Pru-
dential Ins. Co.,* 176 N. Y. 178 (68 N. E. 252, 98 Am.
St. Rep. 656). The provision for payment is referred
to as the "facility of payment" provision, and its
purpose is said to be—

"to afford a ready method of raising money for the
benefit of the insured, to pay funeral expenses at the
time of death, or to furnish medical assistance or
some other relief in the last illness." *Foryciarz* v.

*Prudential Ins. Co.*, 95 Misc. Rep. 306 (158 N. Y. Supp. 834, Ann. Cas. 1918 B, 1186, note).

The amounts involved are usually small; no more than needed to pay expenses incident to the last illness and burial of the insured.

By the terms of this policy payment was to be made to the executor or administrator of the deceased unless "made under the provisions of the next succeeding paragraph." Under it payment may be made to the—

"husband or *wife,* or any relative by blood or connection by marriage of the insured, *or to any other person appearing to said company to be equitably entitled to the same by reason of having incurred expense on behalf of the insured, or for his or her burial."* (The italics are ours.)

Counsel for the defendant state the "question involved" to be:

"Does the payment of the amount of the policy by an insurance company, under the 'facility of payment' clause, to a person appearing to the company to be equitably entitled thereto, and who has fulfilled all of the policy conditions, discharge the company from further liability under the policy?"

Counsel do not contend that payment to Levada Scott as the widow of the deceased was justified. She was not his widow at the time of his decease, and it is apparent from the agreed statement of facts above quoted that the employees of the defendant at its Detroit office knew that she was not and that he had a wife, Ida Sylvester, then living. But it is insisted that "payment to one appearing to the company to be entitled satisfies the contract, even though such person is unrelated, and there is a surviving spouse," and that under the proof submitted

it was justified in its determination that Levada Scott was so entitled.

In discussing this provision in a similar policy, the court, in *Zornow* v. *Prudential Ins. Co.*, 210 App. Div. 339 (206 N. Y. Supp. 92), said:

"In thus permitting the insurer in a sense to elect to whom it shall pay on the policy, the courts will require, not only good faith on the part of the insurer, but the exercise of sound judgment in making payment to the proper claimant, in order that no great injustice shall be done the estate of the decedent and to those having legitimate claims. In other words, no freedom of arbitrary or capricious choice is given the insurer, nor license to act carelessly and without proper inquiry into the facts. It may not act with such indifference that the funds are diverted from the estate by payment to one who has no legitimate claim upon them. In determining who is the person 'equitably entitled' to receive payment, the insurer must be governed in making its choice by equitable principles approximating at least those recognized by the courts."

The amount due on these policies, $836, was quite a substantial sum when considered in connection with the class of insurance carried by the deceased. When the proofs of death were submitted to the defendant, it became its duty to exercise a sound judgment in determining whether the amounts due on the policies should be paid to Levada Scott. It was not warranted in acting carelessly, or with indifference to the rights of others who might legally be entitled thereto. Its action in determining that Levada Scott appeared to it to be entitled to the proceeds of the policies was based on her statement in the proofs of loss, verified by her, that she was the "widow, beneficiary, and responsible for medical

and funeral bills.'' As before stated, she was neither the widow nor the beneficiary, and this fact was known to the employees of defendant at its Detroit office. Was her statement that she was ''responsible for medical and funeral bills'' sufficient to justify the defendant in finding that it appeared to it that she was ''equitably entitled'' to receive the proceeds of the policies? Treating such a policy as affording ''a ready method of raising money * * * to pay funeral expenses,'' surely some duty devolves upon the insurer to see to it that the money paid is used for such purpose. Primarily, the executor or administrator is entitled to the proceeds of the policy, and it is but fair to the personal representative of the deceased to require the insurer to ascertain the facts on which to found its judgment that some other person is entitled thereto.

The proofs of loss did not disclose the amount of the ''medical and funeral bills.'' The defendant might easily have required proof thereof, and have seen to it that the money, so far as needed, was used for that purpose. It is strongly urged by counsel for the defendant that such is the purpose of the ''facility of payment'' provision. But such purpose surely fails of accomplishment when a sum amounting to $836.70 is paid to a person, known by its employees at its Detroit office not to be the widow of the deceased, on the strength of her statement that she is the widow and responsible for such bills.

In our opinion, the defendant was not warranted on the proofs submitted in finding that it appeared to it that Levada Scott was equitably entitled to the proceeds of the policies.

Decisions from other States are collected and annotated in 28 A. L. R. 1350, and 49 A. L. R. 939. In most of them the amounts involved were small, and

the circumstances surrounding the payments were held to justify the action of the insurer. None of them presents facts similar to those here before us.

The judgment is affirmed.

BUTZEL, C. J., and WIEST, CLARK, McDONALD, POTTER, NORTH, and FEAD, JJ., concurred.