## DORSEY v. METROPOLITAN LIFE INS. CO.*
### No. 14315.

Court of Appeal of Louisiana. Orleans.
Jan. 16, 1933.

*Rehearing denied February 13, 1933. Certiorari denied by Supreme Court March 27, 1933.

Spencer, Gidiere, Phelps & Dunbar, of New Orleans, for appellant.

Sanders, Baldwin, Viosca & Haspel and Robert Weinstein, all of New Orleans, for appellee.

JANVIER, J.

Julia Dorsey, an aged woman, died in this city, leaving a small amount of cash in one of the local banks and also two industrial life insurance policies issued by defendant, Metropolitan Life Insurance Company. One of the policies stipulated that payment would be made to the insured herself on the anniversary date of the policy next succeeding insured's seventy-ninth birthday, and further provided that, in case of the death of the insured prior to such time at which the proceeds would have been payable to her, then "the Company may pay the amount due under this Policy to either the beneficiary named below or to the executor or administrator, husband or wife, or any relative by blood or connection by marriage of the insured, or to any other person appearing to said Company to be equitably entitled to the same by reason of having incurred expense on behalf of the insured, or for his or her burial; and the production of a receipt signed by either of said persons shall be conclusive evidence that all claims under this Policy have been satisfied." The beneficiary named in this policy was Amos Dorsey, son of the insured.

The other policy was made payable also to the insured herself on the anniversary date of the policy next succeeding her seventy-ninth birthday, and it, too, provided that in the event of her death prior to the time at which the proceeds would have been payable to her, then it should be payable "to the executor or administrator of the insured, unless payment be made under the provisions of the next succeeding paragraph." The next succeeding paragraph referred to above reads as follows:

"The Company may make any payment or grant any nonforfeiture privilege provided herein to the insured, husband or wife, or any relative by blood or connection by marriage of the insured, or to any other person appearing to said Company to be equitably entitled to the same by reason of having incurred expense on behalf of the insured, or for his or her burial; and the production of a receipt signed by either of said persons, or of other proof of such payment or grant of such privilege to either of them, shall be conclusive evidence that all claims under this Policy have been satisfied."

In this second policy, no beneficiary was designated.

Amos Dorsey, the son, referred to in the first policy, died prior to the death of the insured, so that when the insured herself died she left no designated beneficiary, no ascendent, and only one descendent, to wit, a minor bearing the same name as herself, Julia Dorsey, which minor is the daughter of Amos Dorsey, the predeceased son of the insured. The insured also left a brother, Sam Green, to whom it is conceded payment of the proceeds of these policies has been made by the insurer.

The minor, Julia Dorsey, represented herein by her mother, who has been properly qualified as tutrix, brings this action and seeks to compel the insurer to pay to her the proceeds of the two policies, claiming that payment should not have been made to Green, and that the said payment to him has not discharged the obligation of the insurer.

There are three defenses, any one of which, if sustained, will entirely defeat this suit:

(1) By exception of no right of action insurer seeks the dismissal of the suit, contending that, even if it be conceded that the minor is the legal heir of the insured, nevertheless, she has no legally enforceable right, since the policies do not give to any particular person a right of action under them, but create in the insurer the right of selecting from among those persons who constitute the groups or classes set forth some one to whom it may decide to make payment.

(2) By exception of no cause of action the insurer maintains that, since plaintiff has alleged that payment of the proceeds of the policies has already been made to Sam Green, the brother of the insured, plaintiff herself has thus shown that defendant has fully discharged its obligation, because the policies themselves give to the insurer the right to make payment to any one included among certain classes of persons, among whom is "any relative by blood."

(3) By answer to the merits defendant asserts that it has already paid the full amount stipulated for in the policies to Sam Green, brother of the insured, and has thus complied with its obligations assumed by the issuance of the policies.

In the court below the exceptions were overruled and, after a trial on the merits, judgment was rendered for plaintiff, as prayed for. The insurer has appealed.

### Exception of no Right of Action.

It is true that it has often been said that the familiar facility of payment clause, with which we are now concerned, does not create in any person, who may be included within one of the groups or classes of persons set forth in the said clause, any right to demand that he or she be selected by the insurer as

the person to whom payment shall be made. On this point we deem it sufficient to mention only three cases:

Succession of Morris (Segreto v. Metropolitan Life Ins. Co.), 7 La. App. 645, in which we held that such a clause confers no right of action in any individual who may happen to be included in one of the categories named therein.

In Simmons v. Morgan's La. & Tex. R. R. & S. S. Co. et al., 10 La. App. 97, 120 So. 537, a widow and a child brought suit against an insurer and contended that, since they were relatives of the insured, the one by marriage and the other by blood, they were included among those classes named in the clause, and were thus entitled to enforce payment of the proceeds to them. We held that there was "no possibility of the existence of a right of action in plaintiffs as the widow and the child of decedent."

In Lewis v. Metropolitan Life Ins. Co., 178 Mass. 52, 59 N. E. 439, 86 Am. St. Rep. 463, it was said:

" * * * But that clause does not entitle one to whom such a payment might have been made, but who is not named as the beneficiary of the policy, or otherwise designated as the person who is to receive the sum to be paid, to enforce payment of the sum due under it."

■■ However, we do not feel that the rule set forth in the three cases cited, and in many others, should be extended so as to deprive a named beneficiary, if there be one, or the estate's legal representatives, if there be no named beneficiary, of the right to enforce by legal process the obligations assumed by the insurer and not already discharged by payment made in good faith to some one else. Counsel for exceptor argues that, since the various persons or classes of persons set forth in the policies, as those to any of whom payment may be made, are separated by the disjunctive "or," the insurer is given the option of selecting some one in any of the groups, and that therefore no one in any of the groups has the right to demand his or her selection. For instance, it is contended that, since in one of the policies it is agreed that the insurer may pay the proceeds to "either the beneficiary * * * or to the executor or administrator, husband or wife, or any relative by blood or connection by marriage * * * or to any other person appearing to said company to be equitably entitled to the same," no one, not even the beneficiary and not even the administrator, may demand that payment be made to him. To so hold would be to say that in such a policy there is no legally enforceable obligation to pay in any event, because, if there is no one who has the legal right to enforce an obligation, that obligation may as well not exist. It is a general, well-established rule that an obligation of an insurer cannot fail for want of a particular payee. Walsh v. Mutual Life Ins. Co., 133 N. Y. 408, 31 N. E. 228, 28 Am. St. Rep. 651.

■■ We feel that the position assumed here by the insurer may be sustained where the suit against it is brought by one who is neither the beneficiary named, nor the legal representative of the estate, but is only one of those persons to whom the insurer may make payment if it believes it proper to do so; and we feel, further, that even against a suit by a named beneficiary, or by a legal representative of the estate, it is a complete defense for the insurer to show that in good faith it has already made payment to some one who is included among those mentioned in the facility of payment clause. But we cannot sustain the view that, if payment has not been made, an insurer may, by exception of no right of action, defeat the claim of a beneficiary, or of an executor or administrator; for to hold otherwise would be, as was said in Walsh v. Mutual Life Ins. Co., supra, to permit the option granted "to be used to defeat the purpose of the insurance."

That a representative of the estate may sue in such case has been repeatedly held, and we find in Corpus Juris, Vol. 31, page 970, § 7, that "in the absence of a beneficiary, a relative, or a person equitably entitled, the money is payable to insured's estate, that is, to his executor or administrator." In Lewis v. Metropolitan Life Ins. Co., supra, with reference to the right of the estate's representative to file such a suit, it is stated that "such a suit can be maintained only by the executor or administrator of the insured with whom the contract was made."

We have no reason to doubt that in Louisiana the rule is the same, for we find that in Simmons v. Morgan's La. & Tex. R. R. & S. S. Co. et al., supra, in which we denied to a widow and to a child appearing in their individual capacities, the right to maintain an action on such a policy, we said that "a suit for this purpose would have to be filed by the representative of the estate; that is to say, the administrator."

In Lewis v. Metropolitan Life Ins. Co., 17 La. App. 143, 134 So. 699, 700, we find support for this view in the following language:

"There is not any allegation that plaintiff was the executrix or administratrix of the succession, * * * we do not think that she could recover on the policy in the absence of evidence showing that she was the representative of the succession."

■ But counsel for exceptor contends that, even if a personal representative may file such a proceeding as this, plaintiff here is neither administratrix nor executrix, but is a minor appearing through her tutrix. However, the minor is alleged to be the granddaughter and sole legal heir of the insured, and in such case, where, on behalf of such minor, a suit is filed by the tutrix on a claim

due to the estate inherited by the minor, the said tutrix really appears as the administratrix of the estate of the insured. This view is supported by ample authority growing out of a construction of article 337 of our Civil Code, which, in part, provides that the tutor "shall administer his [the minor's] estate as a prudent administrator would do." That the estate which the tutor may administer includes that of the deceased from whom the minor has inherited is now well settled. In State ex rel. Jones v. City of Shreveport, 33 La. Ann. 1247, we find the following:

"The relator having died since the appeal was taken, Thomas Phillips, the tutor of the minor heir and sole heir of the deceased, has filed in this Court a motion to revive the suit in his name, as the representative of the minor and of the succession of his deceased father, the relator.

"This application is opposed by the defendant, on the ground that the tutor does not legally represent the deceased or his succession and cannot stand in judgment therefor. The earlier decisions of this Court sustain this position, 2 Hen. S. 11, p. 1476, but they are overborne by a long line of decisions, commencing over thirty years ago, with the case of Bryan v. Atchison, 2 La. Ann. 463, and followed by many others, which settle the principle, that, where the heirs of a decedent are minors, their tutor can, as it were, ex officio, administer his succession, so long as not opposed by creditors, who may require the appointment of an administrator. C. C. 940–41–42, 945; C. P. 976; Bryan v. Atchison, 2 La. Ann. 463; Succession of Story, 3 La. Ann. 502; Monget v. Penny, 7 La. Ann. 134; State v. Heirs of Leckie, 14 La. Ann. 641; Succession of Sutton, 20 La. Ann. 150."

In State v. Heirs of Leckie, 14 La. Ann. 641, in the syllabus, appears the following:

"Where the succession is accepted with the benefit of inventory, the appointment of an administrator becomes necessary, except when the heirs are all minors represented by a tutor, which case is made an exception to the general rule, the tutor having the right to administer, if the creditors do not require the appointment of an administrator."

In Deshotels v. Lafleur, 134 La. 1052, 64 So. 905, 908, objection was made to the right of the tutor to stand in judgment in a matter growing out of the estate of the deceased. The Supreme Court said:

" * * * Plaintiff was not bound to cause an administrator to be appointed; * . * * defendant, as tutor to his minor children, was the representative of the succession."

In Hair & Labuzan v. McDade, 10 La. Ann. 534, in which it was contended that a tutrix, unless she qualified as administratrix, had no standing in court as the representative of the succession of the deceased, the Supreme Court said:

"As tutrix, she had a right to administer upon the estate belonging to her minor children, without taking out letters of administration, unless required so to do by creditors."

See, also, Elizardi v. Kelly, 2 Orleans App. 279, 283; Succession of McCan, 48 La. Ann. 145, 180, 19 So. 220; Tutorship of Scarborough, 44 La. Ann. 288, 10 So. 858.

The tutrix here, representative of the sole heir, in filing this suit, even without so alleging, appeared as administratrix of the estate of the insured, and, as such, she had a right of action. The exception was therefore properly overruled.

■ Though the right of a tutor to appear as the representative of the succession of the deceased, whose property is inherited by the minor, depends upon the absence of objection by creditors, not only is there no showing here that any creditor objects, but it affirmatively appears that no creditor would have a right to object so far as this fund is concerned, because this fund, if there is one, results from the proceeds of insurance policies, and therefore would not be subject to the claims of creditors. Act No. 88 of 1916, re-enacting Act No. 189 of 1914. See Succession of Erwin, 169 La. 877, 126 So. 223; Succession of Aronson, 168 La. 887, 123 So. 608.

### Exception of no Cause of Action.

■ The contention on which this exception is based has already been set forth, but for convenience we repeat that exceptor maintains that, since the petition alleges that payment has been made by the insurer to Sam Green, a brother of the insured, it shows on its face that the policy obligations have been complied with, because under the policies the insurer is given the right to make payment to "any relative by blood."

Plaintiff concedes that exceptor's contention in this regard would be sound but for the fact that the petition contains further allegations which may be construed as charging that the payment made to Green was made in bad faith, and that before the time at which the payment was made the insurer's officials knew that plaintiff was the sole heir and was entitled to the proceeds, and had made claim therefor.

While exceptor denies that there was any bad faith on its part, its counsel argues that, even conceding that there was bad faith in the selection of Green, and even conceding that the payments were made in an effort to deprive the minor of her just rights, and even if the insurer acted capriciously and arbitrarily, still, payment to a blood relative of the insured constitutes a full and complete defense to a claim by any one else, even by a

308

beneficiary, or by an administrator or by an executor.

If this be true, then the exception must be sustained, and therefore, before examining the evidence on the question of alleged bad faith, we must devote ourselves to a consideration of the question of whether a showing of bad faith and of arbitrary and capricious conduct on the part of the insurer in selecting the person to whom it may choose to make payment gives to such a plaintiff as is now before us the right to require that the insurer make payment a second time.

An examination and analysis of that portion of the facility of payment clause, which deals with relatives by blood, shows that there is in that portion no express requirement that the insurer make an investigation into the relative rights of rival claimants, or that it be able to prove that, in making payment to a blood relative, it had good reason to believe that such blood relative was equitably entitled thereto. In this regard persons related by blood, or connected by marriage, are placed in a different category from those who "by reason of having incurred expense on behalf of the insured" may appear to the insurer "to be equitably entitled" to payment. The words "equitably entitled" may be said to place upon the insurer who makes payment to one of those persons within the last class the duty of determining whether there is equity in the claim of such person, and the absence of similar words in that portion of the clause which deals with blood relatives may form the basis of an argument that it was not intended that, in dealing with such blood. relatives, the insurer should be under the obligation of making any such investigation into the equity of the claim of such blood relatives.

Yet we are well convinced that it was not intended by those who framed the said clause, nor by those who, by accepting policies containing it, agreed to it, that insurers should be given the arbitrary right to select the person to whom payment should go, even though the selection be somewhat restricted by being limited to those included within the specified classes.

An insurer manifestly wants no such privilege. It cares not for the right to select the person to whom the proceeds shall go. All it desires is security against being required to pay twice on the same policy.

And surely no insured intends to give to an insurance company the right to select, without rhyme and without reason, some person possibly not even on amicable terms with the insured prior to his death and to give to that person the proceeds of policies paid for by the sweat of the brow of the insured.

In Life Ins. Co. of Va. v. Webre (La. App.) 143 So. 730, 731, we said that the facility of payment clause " * * * is intended as a protection to the insurer when, in the exercise of its sound discretion, it makes payment to a person apparently entitled to the proceeds. * * *"

In Abraham v. Alexander, 7 Orleans App. 6, it is said that:

"It is apparent that the clause above quoted was intended merely to protect the company from erroneous payment in good faith and possible consequent litigation, and was not meant to give the insurer the power to choose and designate a beneficiary."

The facility of payment clause is not intended to produce any such unexpected or unintended result. What is intended by it is simply this: That if the insurer shall make reasonable effort to place the proceeds of the policy in the hands of the person to whom the insured intended that they should go, whether as beneficiary or as representative of the estate, or as the person equitably entitled thereto, but after making such reasonable effort shall make payment in good faith to some person other than the one really intended by the insured, nevertheless such payment, if made to a person or persons included in the various classes set forth, shall constitute a full discharge of the policy obligation.

That there must be a bona fide effort on the part of the insurer to carry out the intention of the insured is the view expressed by most of the text-writers, and this view finds support in many decisions. We note the words "in good faith" in the following excerpt from Corpus Juris, Vol. 31, pages 969, 970:

"Within certain limits, the facility of payment clause confers on the company an option as to whom it will make payment. If the company exercises its option and makes payment in good faith to a person within the classes named in the clause, it is protected and is liable to no one else."

In Zornow v. Prudential Ins. Co., 210 App. Div. 339, 206 N. Y. S. 92, 93, a case which we find cited in many later decisions, it is said that:

"But, in thus permitting the insurer in a sense to elect to whom it shall pay on the policy, the courts will require, not only good faith on the part of the insurer, but the exercise of sound judgment in making payment to the proper claimant, in order that no great injustice shall be done to the estate of the decedent. * * *"

In Cohen v. John Hancock Mutual Life Ins. Co., 135 App. Div. 776, 119 N. Y. S. 850, 852, the court said that such a clause "does not enable the company to defeat the claim of the beneficiary by exercising its option in bad faith."

In American National Ins. Co. v. Scott (Tex. Civ. App.) 257 S. W. 934, although the question of whether the insurer had acted in good faith in ignoring a wife who had been named

beneficiary and in making payment to a mother was not actually discussed, the court took pains to point out that the mother had taken care of the insured and had paid for the funeral. If, in any event, and regardless of good faith, payment to a blood relative constituted a full defense, there would have been no necessity to set forth at length the circumstances which were relied on as justifying payment to the mother.

The same may be said of Thompson v. Prudential Ins. Co., 119 App. Div. 662, 104 N. Y. S. 257, and of numerous other cases relied upon in 31 Corpus Juris, supra. In Sylvester v. Metropolitan Life Ins. Co., 255 Mich. 302, 238 N. W. 234, a payment was held no protection because it had been made without sufficient reason for believing that the payee was equitably entitled thereto. It is true that in Bass v. Metropolitan Life Ins. Co., No. 7780 of the docket of this court, Book 56, unreported [see Louisiana and Southern Digest], we find a decision which, unless carefully analyzed, may appear to be authority for the view that payment made to any one within the classes mentioned in the said clause constitutes a full defense under all circumstances and in any event; but, if that case be carefully analyzed, it appears as authority for the view that payment under such a clause to any one within one of the classes mentioned therein is conclusive against all other persons only if such payment be made to one who, the insurer in good faith believes, is entitled to it. True enough, one of the judges, in concurring in the decree in that case, said:

"I concur in all except that the payment by an insurance company under such a clause is conclusive under all circumstances."

But, as we read that opinion it does not necessarily hold that a payment in all events and under all circumstances is conclusive. If that decision can be so construed, then we do not believe that the ends of justice require that it be followed. If so construed, not only is it in conflict with the decision of this court in Abraham v. Alexander, supra, but it stands alone in the jurisprudence of this court, and therefore does not necessarily establish fixed authority, and the doctrine "stare decisis et non quieta movere" is not applicable.

We note particularly that in this state it is well settled that a single decision is not necessarily binding. In Smith v. Smith, 13 La. 441, it was said that "more than one decision * * * is required to settle the jurisprudence on any given point or question of law," and it was also said, in Lagrange v. Barre et al., 11 Rob. 302, 310, "We have often said it requires more than one decision to establish the jurisprudence."

In Quaker Realty Co. v. Labasse, 131 La. 996, 60 So. 661, 665, Ann. Cas. 1914A, 1073, Mr. Justice Provosty set forth the Louisiana doctrine on this point in the following language:

"Only seldom can a single decision serve as a basis for stare decisis."

And, says the Tulane Law Review, Vol. 7, No. 1, page 100 (Stare Decisis in Louisiana), this view "corresponds to, and is followed in, the majority of the American states."

We do not say, nor do we intend, that the insurer, under such policies, is under the obligation of making an extended investigation, or of provoking succession proceedings. Policies such as these are always written for comparatively small amounts and at very low premiums. Extended investigations would be expensive, and the companies would soon find that they must increase the premium rate. Furthermore, such investigations would take considerable time and would defeat the purposes for which the policies are usually written, because the proceeds are looked to to pay expenses of last illness, funeral bills, and to make other emergency payments which, in such situations, cannot be delayed. But the circumstances must be such as would, after superficial investigation, convince a reasonably prudent person desiring to carry out the wishes of the insured, that the payment intended to be made is not manifestly against those wishes, and is not obviously made to persons without any equitable or moral right thereto.

### On the Merits.

The evidence shows that when claim for payment was made by Green, he presented with the claim receipted bill for funeral expenses, and also the two policies in question. It also shows that shortly thereafter a personal visit at the office of the insurer was made by the tutrix, who now represents the minor, and that she did not state that she appeared as administratrix of the estate of the deceased, and made no written demand for payment. She was told to place her claim in writing, and that it would be considered. Several days later, no written claim having been made by her, payment was made to Green. To hold that payment here was in bad faith would be to hold that the facility of payment clause is of no effect, and that an insurer who issues such a policy must, at its peril, see that the proceeds find their way either to the beneficiary or to the legal representative or to the legal heir. No such obligation is placed upon such an insurer, who, we find in this case, was justified in making payment to Green. Therefore that payment is a complete bar to this action.

The judgment appealed from is annulled, avoided, and reversed, and the suit is dismissed at the cost of plaintiff.

Reversed.

WESTERFIELD, J. (concurring).

I agree with my associates in most of what is said in the opinion and concur in the decree, but disagree with them as to the necessi-

ty for the interpretation of the facility of payment clause, which seems to me to be very plain and clear, and to confer upon the insurance company the right, or the option, of paying to any one within the limits mentioned in the clause. I do not see how there could be any question of bad faith on the part of an insurer who pays the avails of the policy in accordance with the letter of the contract of insurance. Whether the discretion vested in the insurer by such a clause, in permitting it to make payment to one out of such a large group of persons as is comprehended by the phrase "relative by blood," or "connection by marriage" of the insured, or, "to any other person appearing to said Company to be equitably entitled to the same by reason of having incurred expense on behalf of the insured, or for his or her burial," is a matter which concerns only those who entered into the contract, since it is conceded that the clause under consideration violates no principle of public policy.

"All things that are not forbidden by law, may legally become the subject of or the motive for contracts. * * *" R. C. C. art. 1764.

The best method of determining the intention of parties to a contract is by a consideration of the contract itself, and, if it be found to be without ambiguity, there is no need to resort to canons of construction. The phraseology of the clause under consideration is very plain and confers the privilege upon the insurer of paying any one of a number of persons to facilitate it in the discharge of its obligation under the contract. If there had been any intention to qualify this privilege in any way, the purpose would have been reflected in the language employed.