## HOOKS v. METROPOLITAN LIFE INS. CO.

No. 16571.

Court of Appeal of Louisiana. Orleans.

Jan. 11, 1937.

J. I. McCain, of New Orleans, for appellant.

Spencer, Gidiere, Phelps & Dunbar and Wood Brown, all of New Orleans, for appellee Metropolitan Life Ins. Co.

Clem F. Perchall, Rudolph F. Becker, Jr., and Harry T. Wilkins, all of New Orleans, for interveners-appellees.

JANVIER, Judge.

When Jeanette Kent died in this city on April 27, 1934, George Hooks, in whose home she had lived intermittently, found, among her meager effects, two policies of insurance which had been issued to her by Metropolitan Life Insurance Company. For some time previous to her death she had not paid premiums on these policies, and, had it not been for the provisions of Act No. 193 of 1906 they would have been worthless.

Hooks, having been advised that, because of the said statute, the policies still had some value, and declaring that since he had paid the burial expenses of the said deceased he was entitled to the proceeds of the policies, presented them to the insurer and made claim thereunder.

The insurer, believing at that time that its liability under the policies was limited to the sum of the paid-up values which, at the time of the respective lapses of the policies, the accumulated reserves would have purchased, and believing, also, that Hooks had paid, or obligated himself to pay the burial expenses of the assured, tendered to him $73.53 as the full amount due as the sum of the paid-up values of the two policies. He accepted this. Later the Supreme Court of Louisiana, in Succession of Watson v. Metropolitan Life Insurance Company, 183 La. 25, 162 So. 790, held that under such circumstances the

reserve accumulated on a lapsed policy must be applied to the purchase of extended insurance for the full face amount of the policy for such term as the reserve will purchase, rather than to the purchase of paid-up insurance for a smaller amount. Thereafter, as a result of that decision—in the Watson Case—Hooks made claim on the insurer and demanded the difference between the paid-up value, $73.53, which had already been paid to him, and the face value of the two policies. In the meantime, however, Isabell Davis and Frances Spradly presented themselves and, asserting that they were the legal heirs of the said deceased, made written demand on the insurer for the balance which all parties now admit is due under the said policies to the righful claimant and which is now conceded by all parties to be $290.35.

Because of these conflicting claims, the insurer was unwilling to pay the balance to Hooks and he filed this suit, asserting that, since the insurer had made the original payment of $73.53 to him and had thus recognized him as the beneficiary, it must pay the additional sum to him also and cannot be heard to deny that he is the rightful owner of the said unpaid balance.

In answer to Hooks' petition, the insurer, proceeding under the provisions of Act No. 123 of 1922—the interpleader statute—deposited in the registry of the court the balance admittedly due to the rightful claimant and called upon the rival claimants to appear and assert their respective claims. In its petition of interpleader the said insurer admitted that it had made the original payment of $73.53 to Hooks and alleged that it had done so in the belief that he had "paid a funeral bill of the insured * * * and was, therefore, equitably entitled to the payment. * * *"

In answer to the petition of interpleader there appeared Hooks, the original petitioner, and four heirs of the assured, to wit, Frances Spradly and Isabell Davis, who had already made written claim, and also Thomas Henry and Rogers Turner, which four alleged heirs, acting together, made joint claim for the proceeds. On October 19, 1936, in the succession proceedings of the insured, there was judgment recognizing the four alleged heirs as heirs-at-law of the said assured and sending them into possession of her estate. Thereafter, in this interpleader proceeding, there was judgment in favor of the said heirs and dismissing the claim of Hooks. He has taken this appeal.

Hooks has made no attack on the judgment rendered in the succession proceedings which recognized the four named persons as heirs of the assured and, if he is to succeed in his attempt to obtain the balance due under the policies, he must do so not because of any defect in their rights as heirs, but solely because of the strength of his own claim as recognized beneficiary and because of his right as such, if he has such right, to be preferred over the legal heirs.

He does not claim to be a relative of the assured, nor that he was designated by her as beneficiary, but rests his claim solely on the ground that, since the insurer, in making the first payment to him, recognized him as beneficiary, neither it nor any one else may be heard to question his right to the subsequently discovered unpaid balance.

When the insurer paid to him the amount which all thought was the total amount due, it did so because of the provisions of the so-called "facility of payment" clause under which it was stipulated that the insurer might secure full release of its obligation by making payment to any one or more of certain persons "equitably entitled to the same by reason of having incurred expense on behalf of the insured, or for his or her burial."

On behalf of Hooks it is contended that payment under this clause operates not only as a full release of the insurer, but also as a full settlement of all conflicting claims among rival claimants, and also that, when the insurer has once determined upon and selected the person to whom it will make payment, if that person is one who, under that clause, may receive it, the insurer is irrevocably and forever estopped to reverse or, in any way, to alter its decision.

On behalf of the recognized heirs several contentions are made. In the first place it is said that in no case may a creditor be "equitably entitled" to the proceeds of such a policy except in an amount to some extent commensurate with the amount of the debt due to him; in other words that, if the policy is for a large sum—for instance, $10,000—and the debt due or the funeral bill incurred is insignificant—say $200—it cannot be said that the creditor is equitably entitled to the

enormous excess which will remain after the payment of the debt.

This contention is interesting and finds some support in logic and among the adjudicated cases. But we need not consider it here.

In the second place, it is asserted that the facility of payment clause was not intended and should not be so interpreted as to operate as a settlement among rival claimants, but was intended solely to afford a defense to an insurer which, in good faith, has made payment to a person apparently equitably entitled to the proceeds, and that when such payment is made the insurer is fully protected, but that the person or persons who were actually entitled to the payment are not estopped to proceed against the person who may have received it if that person, though apparently entitled thereto, was not so entitled as a matter of actual fact. This view finds support, also, in logic and in some previously decided cases, but we need not consider it here.

The third contention of the heirs is that Hooks did not, as a matter of fact, pay or obligate himself to pay the funeral bill of the assured, and that, therefore, even under the facility of payment clause, he is not entitled to the proceeds.

■ That Hooks neither paid nor obligated himself to pay the funeral bill is apparent from the record, which shows clearly and by his own testimony that, without in any way assuming any personal obligation, he showed the policies to the undertaker and said, "Do you think you can bury her with these?" and that the undertaker agreed to do so and then afterwards, through Hooks, collected the proceeds and returned to him the small balance which remained after the payment of the funeral bill. Clearly, there was nothing in the action of Hooks in that transaction which, under the facility of payment clause, gives him any equitable right to the proceeds of the policies. He did not assume the obligation; he did not pay the bill. He merely turned over the policies, permitted them to be collected and then received back the balance which remained.

■ Sensing the weakness of his client's position in this regard, counsel for Hooks sought to show that he was entitled to the proceeds because of the fact that, during the last months of the assured's life, Hooks had supported her as a member of his household, and that, therefore, he was entitled to the proceeds because the facility of payment clause also declares that protection is afforded to the insurer if payment is made to one who may appear equitably entitled thereto "by reason of having incurred expense on behalf of the insured." But the pleadings of Hooks do not warrant the consideration of any evidence tending to show that any such expense was incurred. In his original petition he makes no reference to such expense, alleging solely that the insurer, in making the first payment, had recognized him as beneficiary. In the petition of interpleader the insurer alleged that it had made the payment to Hooks because it believed that he had paid the funeral bill. It made no reference to any other fact which would have brought Hooks within the category of those referred to in the facility of payment clause. Hooks answered this allegation, admitting that the payment had been made to him because the insurer believed that he had paid the funeral bill and he made no further allegation concerning the incurring of any other expense. Thus, Hooks permitted the matter to go to trial solely on the allegation that he had paid the funeral bill. Therefore, when timely objection was properly made, evidence concerning such alleged expense should have been completely excluded. It should not have been considered. But, even if such evidence could be considered, we deem it far from conclusive on the question involved. There are contradictions which make it extremely doubtful that any substantial support was afforded to the assured by Hooks.

■ It thus appears that, as a matter of actual fact, Hooks was not among those persons to whom, under the facility of payment clause, payment might have been made. Nevertheless, since it is conceded that the insurer acted in good faith in making the original payment to him, his counsel contends that no question may be raised as to his right to receive the balance. In other words, it is argued that, even though the original payment may not have been actually due to Hooks, nevertheless, because he received it without opposition, he must be given all other payments. We cannot agree that the facility of payment clause can be given any such unfair and improper meaning. It was unquestionably inserted in policies solely for

the protection of the insurer who acts in good faith, and if, by reason of peculiar circumstances, an insurer who has made one or more payments under a policy discovers facts which show that no further payments should, as a matter of equity or right, be made, that insurer would not be in good faith which continued to make payments to the improperly selected beneficiary merely because it had made previous payments to him.

The facility of payment clause does not afford to the insurer the absolute right, unquestioned and unchallenged, to exercise its own discretion and judgment in making payment even to those persons who are included within its terms. The facility of payment clause, as we have heretofore held, merely gives to the insurer protection if, in the exercise of its discretion and acting on such information as it has before it, it makes payment in good faith to the person apparently equitably entitled thereto. That is all that we said in Dorsey v. Metropolitan Life Insurance Company, 145 So. 304, 310. We did not hold that payment might be made to any one included within the clause and without any serious effort on the part of the insurer to make proper payment to the proper person and that we did not so hold is evident from a reading of the concurring opinion, which agreed with the conclusion reached, but in which it was stated that there can be no question "of bad faith on the part of an insurer who pays the avails of the policy in accordance with the letter of the contract of insurance."

We also held to the same effect in Wickes v. Metropolitan Life Insurance Company, 170 So. 48, in which we said that the insurer, in order to obtain the protection of the facility of payment clause, must, in good faith, attempt to make payment to the person equitably entitled thereto. In each of those cases an application was made to the Supreme Court for writ of certiorari and in each instance it was refused. This court had previously held to the same effect in Abraham v. Alexander, 7 Orleans App. 6, in which appears the following:

"It is apparent that the clause (facility of payment clause) above quoted was intended merely to protect the company from erroneous payment in good faith and possible consequent litigation, and was not meant to give the insurer the power to choose and designate a beneficiary.

"Though the plaintiff may not proceed against the company, she may claim and recover the amount from the one, not entitled to it, who received payment from the insurer."

Very plainly, then, the insurer would not be protected by the clause if, in spite of the information which it now has, it should make further payment to Hooks.

As a matter of fact, if Hooks should receive payment to which he is not entitled, the persons properly entitled thereto might assert their rights against him and might successfully recover back such amount as might be paid to him. We do not refer to the original payment, since it is conceded that that payment was properly made, but we refer to the fact that, if the company should pay the balance, or should have paid the balance to Hooks, recovery could have been made from him by the heirs, and we say this because the obvious result is that, if those heirs might recover from him a payment improperly made to him, they may, in this interpleader proceeding, recover the amount directly and prevent his obtaining the judgment which he now seeks.

In the court below there was judgment recognizing the right of the insurer to make the deposit and to receive out of the deposit the costs necessarily incurred. In this particular the judgment was correct, as it was on the main issue.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, affirmed at the cost of appellant.

Affirmed.

WESTERFIELD, Judge (dissenting).

I believe that the facility of payment clause authorizes the Insurance Company to pay the proceeds of the policy to any one who, in its judgment, is equitably entitled to receive it subject only to the conditions mentioned in the clause itself. Having selected the beneficiary Hooks in this case, it cannot revoke its choice, there being no question of bad faith involved. The only reason that Hooks did not receive the entire amount due under the policy was the mistaken attitude of the insurer as to the amount due. If it had originally realized that $363.88 was due under the policy, it would have paid the entire sum to Hooks and this proceeding could not have been instituted because there would have been nothing to litigate.

To say that the recipient of the proceeds of a policy under the facility of payment clause must prove his right to the funds regardless of the good faith of the insurer which selected him as the beneficiary, would be equivalent to a denial of the right of the insurer to pay him, a privilege, or a duty, as the case may be, expressly given the insurer under the terms of the policy. It may be that this clause is put in the policy for the convenience of the insurer, but it cannot reasonably be construed to mean that it shall have no other effect than to rid the insurer of the annoyance of conflicting claims for the awards of the policy. The policyholder agrees that the company may select the beneficiary under the facility of payment clause. The stipulation that the insurer has the right to select and pay certain persons involves as a necessary corollary the admission that the person selected has the right to receive and retain the payment.

I respectfully dissent.